## Pittsburg and Birmingham Passenger Railway Co. *versus* City of Pittsburg.

1. A corporation was authorized to make a passenger railway along a street of a city, but not to use the street until the consent of the councils should be had, and to keep so much of the streets "from curb to curb as may be used by them, in perpetual good repair, at the expense" of the corporation. The councils gave consent, on condition the corporation should keep the street in a good and sufficient state of repair, and "in a reasonable sanitary condition." On one side of the street was a ravine, rising to the top of a hill ; by an extraordinary rain, rocks, stone, &c., were washed down the ravine on the street, eight or ten feet in depth, for one hundred feet in length. *Held*, that the railway corporation was bound to remove the deposit from the street.

2. It had been the duty of the city to remove such obstructions, and by the act the duty of the city in this respect was transferred to the corporation.

November — 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1875, No. 214. This was an amicable action, to July Term 1874, of the court below, between the Pittsburg and Birmingham Passenger Railway Company, plaintiffs, and the City of Pittsburg, defendant.

The case stated was as follows :—

" By an Act of Assembly, approved the 13th of April 1859, Pamph. L. 740, the plaintiffs were incorporated and authorized to construct and maintain a passenger railway along Carson street, in the borough of South Pittsburg. The 8th section of said Act provides :—

" ' That the said railway company shall not be permitted to use

[Pittsburg & Birmingham Passenger Railway Co. *v.* Pittsburg.]

and occupy any of the streets of the said city of Pittsburg or streets of said borough, for the purposes of their railway, until the consent of the councils of said city and borough is first thereto had by ordinance, duly passed;'   *   *   *   'and the said company shall keep so much of the streets of said city and borough, from curb to curb, as may be used and occupied by them, in perpetual good repair, at the proper expense and charge of the said company.'

" On the 15th day of August 1859, the borough of South Pittsburg passed an ordinance, giving its consent to the occupancy of said Carson street by said company, upon certain terms therein contained, *inter alia.*

" ' Section 1st.   *   *   *   and provided, also, that the said railway company shall keep said Carson street in a good and sufficient state of repair from curb to curb, to the satisfaction of the committee on streets appointed under the authority of said borough, and also keep said Carson street in a reasonable sanitary condition.'

" The company accepted the terms of said ordinance.

" Carson street is and was at the time of the passage of said ordinance paved with boulders from curb to curb.

" By an Act of Assembly, approved April 2d 1872, Pamph. L. 703, the said borough of South Pittsburg was annexed to the city of Pittsburg and made part thereof.

" There is a natural ravine in what was formerly the borough of South Pittsburg, running from a point near the southern side of Carson street, between First and Second streets, to the top of Coal Hill, about 1000 feet long.

" On the 26th of July 1874, a very heavy and extraordinary rain fell, causing a great wash down the said ravine of rocks, stone, gravel and dirt, which was deposited on the roadway of Carson street, and covered the same for the distance of about one hundred feet in length and eight or ten feet in depth.   This wash completely interrupted all travel over the roadway of aforesaid street by the railway or otherwise.

" The plaintiffs (after calling on the street commissioners to remove the wash, who refused to do so,) caused the same to be removed from Carson street, at an expense to the said company of $135.12.

" Should the court, under the above stated facts, be of the opinion that the plaintiff company was not legally bound, at its own expense, to remove from the roadway of Carson street the said wash, then judgment to be entered for the plaintiff for $135.12, with interest from 27th of July 1874, and costs of suit; but, if the contrary, then judgment to be entered for the defendant for costs."

.  The court entered judgment for the defendant.

[Pittsburg & Birmingham Passenger Railway Co. v. Pittsburg.]

This was assigned for error on the removal of the record to the Supreme Court by the plaintiffs.

*M. W. Acheson*, for plaintiffs in error.

*T. J. Bigelow*, for defendant in error, cited Pittsburg & Bir. P. Railway Co. v. Birmingham, 1 P. F. Smith 43.

Mr. Justice MERCUR delivered the opinion of the court, January 6th 1876.

The plaintiff was incorporated by Act of Assembly of the 13th of April 1859, Pamph. L. 749. It was thereby authorized, *inter alia*, to construct and maintain a passenger railway along Carson street in the borough of South Pittsburg. Section 8th of the act declares that the company shall not be permitted to use and occupy any of the streets in said borough for purposes of their railway, until the consent of the council of the borough is first thereto had by ordinance duly passed, and " the said company shall keep so much of the streets of said borough, from curb to curb, as may be used and occupied by them, in perpetual good repair, at the proper expense and charge of the said company."

By ordinance of the 15th of August 1859, consent was given by the borough to the company to use and occupy Carson street, in accordance with said Act of Assembly, "provided also that said railroad company shall keep said Carson street in a good and sufficient state of repair from curb to curb, to the satisfaction of the committee on streets, appointed under the authority of said borough, and also keep said Carson street in a reasonable sanitary condition." The company accepted under this ordinance. By Act of the 2d of April 1872, the borough of South Pittsburg was annexed to and made a part of the city of Pittsburg.

A natural ravine of about one thousand feet in length extends from the top of Coal Hill down near to Carson street. In July 1874, a very heavy and extraordinary rain fell. It washed from and through the ravine, rocks, stone, gravel and earth, depositing them in Carson street for a distance of about one hundred feet in length and eight or ten feet in depth. Travel over the street, either by railway or otherwise, was thereby interrupted. The plaintiffs (after requesting the city authorities to remove these obstructions, and their refusal so to do,) caused them to be removed, and now claim to recover from the city the expense of that removal.

The question presented is : was the company bound to remove those obstructions at its own expense ?

Prior to the Act of 13th of April 1859, Carson street was a public highway. The municipal authorities were bound to keep it in repair. It was their duty to remove all obstructions that might be placed thereon, by floods or otherwise, which interfered

with the use or travel of the street. The manifest intention of the statute, and of the ordinance, was to transfer to the company the exclusive duty of keeping in repair all that portion of the street which lies between the curbs. Hence, in the words of the former, the company was to keep the street "in perpetual good repair," and in those of the latter, " in a good and sufficient state of repair." Neither one contains any intimation that the municipality was to repair under any contingency. But to make it more clear that the company assumed the whole duty of keeping the street in repair, the ordinance required it to be so kept "to the satisfaction of the committee on streets." This practically gave to the municipality the power of deciding on the goodness and the sufficiency of the repairs made by the company. Still further, the company was to keep the street "in a reasonable sanitary condition." Thus the company not only agreed to keep it in repair, but to keep it clean. These two obligations previously rested on the borough. By this agreement the company assumed them. Why shall it not fulfil them ?

It is urged by the plaintiffs that this unusual deposit was not in contemplation of the parties, and, therefore, was not designed to be covered by the agreement. The first part of the proposition may be correct. The full extent of the injury may not have been anticipated, yet it by no means follows that the agreement did not cover it. The ravine was known and visible. The inclination of its sides, as well as its steep declivity towards the street, were not concealed. They gave unmistakable evidence of the manner in which the water would be collected in times of severe showers, and dashed down into the street. All experience teaches that the tendency is to wash out the bed of the ravine, and to deposit the material of which it is composed at or near its foot. The company possessed all this knowledge. This liability to injury is presumed to have been considered by it, yet it made no exception to its liability to repair. In the broadest and most comprehensive terms it agreed to " keep said street in a good and sufficient state of repair."

It was well said by Chief Justice Gibson, in Schuyl. Nav. Co. *v.* Moore, 2 Whart. 491, the best construction is that which is made by viewing the subject of a contract as the mass of mankind would view it ; for it may safely be assumed that such was the aspect in which the parties themselves viewed it. Applying this rule of construction, can a reasonable doubt exist that the contract covered the injury in question ? The subject-matter was a street. It was to be kept in a suitable condition for all the uses and purposes of a street. That obligation rested somewhere. If it be said that it is thrown back on the municipality, where the general law imposed the duty of repairing, I answer that the later and special law

transferred that duty to the company. No other conclusion will give full effect to the statute of 13th of April 1859.

It is further contended that the agreement only contemplated keeping in repair the roadway or pavement of the street, and did not extend to the removal of deposits made thereon by third persons, or by the operation of natural causes. This narrow view finds no warrant in the Act of Assembly, nor in the ordinance. Neither of them speaks of the roadway or the pavement, but of the street as a street, and for all the purposes of a street. The manifest intention of the parties was that the company should keep the whole street, " from curb to curb," in good condition, for free and uninterrupted travel as a public highway. If the walls of a house should fall into it; if a tree should be blown across it ; if any person should place obstructions in it, none of these might destroy the surface of the paved roadway, yet as a street or public highway its usefulness would be impaired and temporarily destroyed. Can it be said that a street in that condition is not out of repair ? Its main functions as a street would be suspended.

Repair means to restore to sound or good condition, after injury or partial destruction. As a street, or way of passage, Carson street was injured. It was partially destroyed. It was rendered impassable. To repair it; to restore it to its former condition, required the removal of the deposit thrown upon it. The company could not otherwise fulfil its contract. Nothing less was " satisfactory to the committee on streets."

The conclusion to which we have arrived is well sustained by Passenger Railroad Co. *v.* Birmingham, 1 P. F. Smith 41. The present plaintiff there contended, under the same Act of Assembly and the same ordinance, that it was not bound to remove the dirt which accumulated on Carson street, by its ordinary use as a public thoroughfare. This court held otherwise. It held that the removal of accumulations was a part of the duty of the company, under its obligation to keep the street in perpetual good order and repair. It is true those obstructions were not so extensive as those under consideration now, but the principle is the same.

In delivering the opinion of the court, Mr. Justice READ said : " It is clear, therefore, under any fair construction, the duty of cleansing the street, that is, keeping all in good order, devolved upon the railroad company, and not upon the municipal corporation."

It follows, therefore, that the plaintiffs were bound to remove the obstructions at their own expense, and the learned judge was entirely correct in entering judgment in favor of the defendant on the case stated.                    Judgment affirmed.

Chief Justice AGNEW and Justices GORDON and WOODWARD dissented.