## PHILADELPHIA v. RIDGE AVE. PASS. RY. CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued March 30, 1891—Decided October 5, 1891.

[To be reported.]

1. On a petition for a change of venue in civil cases, under paragraphs 4, 5, § 1, act of March 30, 1875, P. L. 35, the mere averment of facts within the purview of the paragraphs will not of itself require that the application be granted. The court or judge must be "satisfied of the truth of the facts alleged," and that by reason thereof a fair and impartial trial cannot be had.[*]

(a) An ordinance of the city of Philadelphia of July 7, 1857, provided that all street-railway companies should be at the "entire cost and expense of maintaining, paving, repairing and re-paving that may be necessary upon any road, street, avenue, or alley occupied by them," with other provisions subordinating such companies to the general authority and power of the municipality over its streets.

(b) Said ordinance of July 7, 1857, provided further: "Any passenger railroad which is now or may hereafter be incorporated in the city of Philadelphia, shall, by their proper officer or officers who shall sign the same, file in the office of the city solicitor a written obligation to comply with the provisions of this ordinance."

(c) Sections 7, 8, act of April 15, 1858, P. L. 300, incorporating the Girard College Pass. Ry. Co., provided that the councils might establish regulations as to said railway, "required for the paving, re-paving," etc., of streets occupied after consent of councils obtained; that the company should keep said streets in "perpetual good repair at the proper expense of said company," and should be subject to the ordinance of July 7, 1857.

(d) An ordinance was enacted on May 5, 1858, refusing the assent of the city to the occupancy of its streets by said company, unless within 90 days it should "file in the office of the city solicitor a written obligation to observe and be subject to all ordinances of the city in reference to passenger railways then in force or thereafter to be passed;" and such a written obligation was executed by said company on July 29, 1858, and filed.

(e) An agreement between said railway company and another in said city, creating a merger and consolidation of both companies into the Ridge

---

[*] See as to the change of venue in criminal cases, Commonwealth v. Delamater, to be reported with the Middle District cases, post.

Ave. Pass. Ry. Co., was entered into on January 23, 1872, and confirmed by the act of March 8, 1872, P. L. 264, which act provided: "All the provisions in the charters of the two companies so consolidated as above recited, not included in this act, are repealed." *

(*f*) An ordinance enacted December 12, 1881, provided that thereafter it should "be unlawful to pave with cobble or rubble pavement any street in Philadelphia, or to pave the gutters of any street with bricks;" the ordinance not to apply to that portion of any street between the tracks of a passenger-railway company, and not to affect existing contracts.

(*g*) In 1886, said ordinances and statutory provisions remaining in force, the city re-paved with Belgian block a street occupied by the Ridge Ave. Ry. Co.,—by the Girard Coll. Ry. Co. prior to said merger,—after notice directed by resolution of councils, and a disregard thereof, and subsequently brought suit against the Ridge Ave. company to recover from it the expense incurred.

2. It was not error to admit an offer of the ordinances subsequent to that of July 7, 1857, and the "written obligation" of July 29, 1858, in connection with the other evidence, no condition being imposed not in harmony, or conflicting, with the Girard company's incorporating act: Pittsburgh's App., 115 Pa. 4, distinguished; Pittsb. etc. Ry. Co. v. Birmingham, 51 Pa. 41, and Pittsb. etc. Ry. Co. v. Pittsburgh, 80 Pa. 72, followed.

3. By the Girard company's incorporating act of April 15, 1858, P. L. 300, the ordinance of July 7, 1857, was read into the act and became as much a part of the law of the company's being as any part of the act itself; and by the merger and consolidation of the two railway companies it became an integral part of the defendant company's charter, also.

4. The third section of said ordinance declaring in unequivocal language that the company should be at the entire cost and expense of maintaining, paving, repairing, and re-paving that may be necessary upon any street occupied by it, the duty of the company to repair or re-pave, when either is adjudged necessary, extends to the entire roadway from curb to curb.

5. The necessity for repairing or re-paving, etc., is to be determined, not by the company itself, but by the municipal authorities; and it is the special province of the latter to determine how it is to be done, whether with the same kind of material as before, cobblestones in this instance, or with a different and better material, in this instance Belgian blocks; and, in this case, the plaintiff was entitled to recover.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

---

* But see Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219.

Statement of Facts.

No. 127 January Term 1891, Sup. Ct. ; court below, No. 755 December Term 1886, C. P. No. 1.

On January 26, 1887, the city of Philadelphia brought case against the Ridge Avenue Passenger Railway Company, to recover from the defendant company the cost to the plaintiff of re-paving Ninth street from Race to Sergeant. Issue on June 9, 1890.*

On November 1, 1890, upon the petition of the defendant company, verified by the affidavit of its president, a rule was granted to show cause why there should not be a change of venue. This petition, and the relevant provisions of the act of March 30, 1875, P. L. 35, are shown in the opinion of the Supreme Court, infra.

When the cause was called for trial and a jury drawn, on November 10, 1890, ALLISON, P. J., delivering an oral opinion, the rule for a change of venue was discharged.[1]

Thereupon, the defendant, by its counsel, filed an exception, to the jurisdiction of the court, and a protest against a trial before the jury about to be sworn.

By the court: Objection overruled ; exception.[2]

The jury being sworn, the plaintiff put in evidence the act of April 15, 1858, P. L. 300, reading §§ 7 and 8 thereof, providing as follows :

"§ 7. . . . . . And provided further, that the city councils may from time to time, by ordinance, establish such regulations in regard to said railway as may be required for the paving, re-paving, grading, culverting, and the laying of gas and water pipes in and along said streets, and to prevent obstruction thereon: And provided further, that before the said company shall use and occupy the said streets, the consent of the city councils shall be first obtained; and said consent shall be taken and deemed to have been given, if said councils shall not within thirty days after the passage of this act, by ordinance duly passed, signify their disapproval thereof.

"§ 8. That said company, in constructing said road, shall conform to the grades now established, or hereafter to be by law established, of the several streets and avenues traversed by

* After the decision of Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219.

said road, and keep said streets and avenues in perpetual good repair, at the proper expense of said company: Provided, that said Girard College Passenger Railway Company shall be subject to an ordinance of the city councils, entitled ' An ordinance to regulate passenger railways within the city of Philadelphia,' approved the seventh day of July, Anno Domini one thousand eight hundred and fifty-seven."

Also, the city ordinance of May 5, 1858, Ordinances, 175. This ordinance, referring in its preamble to the act of April 15, 1858, P. L. 300, above cited, and other acts relating to other railway companies, enacted in § 1 that councils did thereby declare their disapproval of each and every of said acts and of the rights therein respectively granted to the railway companies therein mentioned; and in

" § 2. That if any company in said preamble named shall within ninety days from the passage of this ordinance and before such company shall occupy any of the said streets or highways, file in the office of the city solicitor a written obligation sufficient in law to bind such company to observe and be subject to all ordinances of the city in reference to passenger railways then in force or thereafter to be passed, then the provisions of the first section of this ordinance as to each and every such company as shall file the written obligation as aforesaid shall cease to have effect."

The plaintiff then offered the " written obligation" of the defendant company, bearing date July 29, 1858, and filed in the office of the city solicitor on July 31, 1858, which, after setting out the foregoing ordinance, and the minutes of the stockholders' meeting authorizing the execution of the obligation proceeded:

" These presents witness, that, for and in consideration of the consent, permission, and authority given and granted as aforesaid by the said city, to said company, to occupy certain highways of said city with the railway of said company, as in their charter is more fully and at large set forth, that the said company, by this, their written obligation, subscribed by their president and secretary, duly empowered for that purpose, do covenant and agree with the said city that the said company shall now and at all times hereafter be bound to observe and be subject to all ordinances of said city in reference to passen-

Statement of Facts.

ger railways now in force or hereafter to be passed as aforesaid; and said company hereby say that the true and sole intent and purpose of these presents is to declare that said company is now and shall be at all times hereafter bound to observe and be subject to all and several the ordinances aforesaid.

"In Testimony Whereof, The president and secretary of said company have hereunto set their hands and corporate seal of the said company, this twenty-ninth day of July, Anno Domini 1858, at Philadelphia aforesaid."

The defendant's counsel objected to the offer, because of its legal invalidity to bind the corporation to any other terms than those imposed by the act of assembly.

By the court: Offer admitted.[3]

The plaintiff then put in evidence the agreement of merger executed by and between the Girard College Passenger Railway Company, and the Ridge Avenue & Manayunk Passenger Railway Company, dated January 23, 1872, the consolidated company thereafter to be known as the Ridge Avenue Passenger Railway Company.

Also, the city ordinance of July 7, 1857, Ordinances, 248, (the ordinance refered to in § 8, act of April 15, 1858,* quoted supra,) reading §§ 3 and 9 of the same. Pertinent portions of this ordinance are quoted in the opinion of the Supreme Court, infra. Section 9, not quoted in said opinion, provided in part as follows:

"§ 9. Any passenger railroad company which is now or may hereafter be incorporated in the city of Philadelphia, shall, by their proper officer or officers who shall sign the same, file in the office of the city solicitor a written obligation to comply with the provisions of this ordinance."

The plaintiff then offered:

(1) The city ordinance of December 12, 1881, Ordinances, 263, enacting as follows:

"§ 1. . . . . That on and after the passage of this ordinance, it shall be unlawful to pave with cobble or rubble pavement any street in the city of Philadelphia, or to pave the gutters of

---

* An ordinance enacted April 1, 1859, Ordinances, 141, repealed so much of § 3 of the ordinance of July 7, 1857, "as provides that the railroad company shall pave any street that has not heretofore been paved."

Charge of Court below.

any street with bricks: Provided, That this ordinance shall not apply to that portion of any street between the tracks of a passenger-railway company, nor shall it affect existing contracts."

And (2) a resolution of councils of May 6, 1886, Journal of Common Council, 82, as follows:

"Resolved, That the chief commissioner of highways be and is hereby authorized to notify any railway company or companies that may pass over a square or squares where Belgian blocks in place of cobblestones are necessary, to forthwith re-pave accordingly; and in the event of the said company neglecting or refusing to re-pave, as directed, within ten days from the date of said notice, then councils hereby authorize the said commissioner of highways to re-pave the same at the expense of the said railway company, and the cost thereof shall be paid by the railway company, and in default of the said company paying the same, after the notice from the highway department, then the city solicitor shall take proceedings to collect the amount thereof, with interest and costs." . . . .

These offers, (1) and (2), were objected to, on the ground of their invalidity to bind the defendant company.

By the court: Objection overruled; exception.[4]

The plaintiff then proved and put in evidence a notice from the chief commissioner of highways, served upon the defendant company July 23, 1886, reciting the resolution of May 6, 1886, and notifying the company to re-pave Ninth street, from Race to Sergeant, with Belgian block, within ten days from the date thereof; and that in case of its neglect or refusal to do the same within the time specified, the commissioner would cause the same to be done at the company's expense. It was then shown that the said notice not being complied with, the work was done by the city. This suit was for the cost thereof.

"The defendants decline to offer any testimony, under the exception taken to the jurisdiction of the court."

The case being closed on the testimony, the court, ALLISON, P. J., charged the jury:

This case which we have been engaged in trying yesterday and so far to-day, is to be determined mainly upon the view of the law which I take of the question, as it stands upon its

Charge of Court below.

legal aspects; and you will be very much guided, therefore, by the instructions which I am required to give you as to what I think is the proper legal principles governing and controlling the case before us.

The questions submitted by the points which I have been asked to charge the jury upon, as submitted by the plaintiff, are mainly questions which affect the construction of the acts of assembly, the ordinances of councils, and the agreement of the defendant company filed in pursuance of the ordinance of councils, and those are purely and entirely questions of law upon which I shall give you directions in a moment. That applies to the first, second, and third points. As to the fourth point, there is a question of fact raised by that point upon which I will say something to the jury, and so also of the fifth and sixth points.

Now, the plaintiff has asked me to say to you:

1. That the Ridge Avenue Passenger Railway Company is bound by all the charter obligations of the Girard College Passenger Railway Company.

Answer: I affirm that proposition, because the Ridge Avenue & Manayunk Passenger railway and the Girard College Passenger railway became consolidated under the laws of this commonwealth; and having consolidated and merged, the present corporation became liable to all the obligations of the two corporations; that is, of the first and of the second coming together and merging their corporate existence into the present corporation, which represents the two, and stands under precisely the same obligations under which the several companies stood at the time when that merger took place. I therefore affirm that proposition.

2. That the Ridge Avenue Passenger Railway Company is subjected by the act of April 15, 1858, chartering the Girard College Passenger Railway Company, to the ordinance of July 7, 1857.

Answer: That ordinance you will probably recall, as it was referred to by counsel, and the substance of it was stated, and I affirm that proposition. That was an existing ordinance at the time the Ridge Avenue Passenger Railway Company was chartered, and the company then chartered was made subject to the provisions of the ordinance of 1857.

Charge of Court below.

3. That the Ridge Avenue Passenger Railway Company is by the corporate obligation of the Girard College Passenger Railway Company of July 29, 1858, subjected to all the provisions of the ordinance of July 7, 1857.

Answer: Those two points merely ask me to say to you that the two corporations which were merged, the Ridge Avenue & Manayunk Passenger Railway Company and the Girard College Passenger Railway Company, were, each of them, subject to that ordinance of July 7, 1857; they are jointly subject to that ordinance of July 7, 1857, because of the merger of the two companies or corporations into one.[5]

4. That if the jury believe that the pavement on Ninth street, above Race street, was out of repair in 1886, and the company defendant failed to comply with the notice to repair, the city had a right to make the repairs at the cost of the defendant.

Answer: I affirm that proposition; that if the jury believe that in 1886 it was necessary to repair the pavement upon Ninth street above Race street, and the company defendant failed to comply with notice to repair, to re-pave, and it was necessary to repair the pavement on Ninth street above Race, and the company defendant failed to comply with the notice, the city had a right to make the repairs at the cost of the defendant.[6]

5. That if the jury believe that in 1886 it was necessary to re-pave the pavement on Ninth street above Race street, and the company defendant failed to comply with notice to re-pave it with the kind of pavement suited to the traffic on the street, the city had a right to lay such a pavement at the cost of the defendant.

Answer: I affirm that proposition.[7]

6. If the jury believe that granite-block pavement is (the pavement with which all large cities in this country and abroad are paving their main streets, and streets on which the traffic is heavy; that such pavement is), considering the first cost and the item of repairs, as cheap if not cheaper than cobblestone pavement, and is the kind of pavement suited to the neighborhood and traffic of Ninth and Race streets, and with which the city is, as fast as its finances will permit, re-surfacing its main streets, then the city had the right to re-pave and repair Ninth

Charge of Court below.

street north from Race street with granite blocks; and the defendant company is liable for the just and proper cost thereof.

Answer : I affirm that proposition, striking out all that follows in the first line the word "is;" that is, the words "the pavement with which all large cities in this country and abroad are paving their main streets, and streets on which the traffic is heavy." I do not think that is a question which the jury have anything to do with, except it may be a fact to be taken into account by the jury in passing upon the question as to whether the Belgian-block pavement was the proper pavement to be laid down on this part of Ninth street. I make this point read as follows : " If the jury believe that granite-block pavement is, considering the first cost and the item of repairs, as cheap if not cheaper than cobblestone pavement, and is the kind of pavement suited to the neighborhood and traffic of Ninth and Race streets, and with which the city is, as fast as its finances will permit, re-surfacing its main streets, then the city had the right to re-pave north on Ninth street with granite blocks, and the defendant company is liable for the just and proper cost thereof." I affirm that proposition with that portion of it stricken out.[8]

Upon the defendant's points I am asked to say to you:

1. No authority to pave Ninth street with Belgian blocks has been shown, and your verdict must be for the defendant.

Answer: I decline to affirm that proposition as submitted.[10]

2. No authority to re-pave Ninth street from curb to curb with Belgian blocks has been shown, and your verdict must be for the defendant.

Answer : I decline to affirm that point; because, if the company were obliged to pave at all or re-pave at all, or keep in repair at all, the street, it is the pavement between curb and curb and not simply between tracks.[11]

3. There is a lack of evidence of any power conferred upon the city of Philadelphia to re-pave Ninth street with Belgian blocks at the expense of the defendant, or at the expense of any other party, and your verdict must be for the defendant.

Answer: I decline to affirm that proposition, because the question of paving or re-paving with any particular kind of pavement is a question that is under the control of the city of Philadelphia as supervisor of the highway. I do not at all

Charge of Court below.

agree with the general proposition that counsel for the plaintiff pressed upon me so erroneously, that the whole power or the whole obligation, so far as paving is concerned, is cast upon the defendant. Notwithstanding the fact that the defendant as a railway corporation accepted the grant of the privilege which was the condition of their filing the agreement with the city of Philadelphia, that they would pave, re-pave, and repair the streets of the city,—notwithstanding that, there is still a general oversight and general care and general obligation resting upon the city of Philadelphia as supervisor of the highway. Those highways are still under their general supervision and control ; and, that remaining and resting upon them, a power to determine what kind of a pavement shall be laid down upon particular portions of the streets of the city remains with the corporate authorities of the city of Philadelphia ; and I decline, therefore, to affirm that proposition. If they decided that Belgian block was the proper pavement to be put down, they had the right so to decide.[13]

4. If you find that the bill of paving sued for is for tearing up a cobblestone pavement existing on Ninth street at the time the railway was laid down, and for re-paving said street from curb to curb with Belgian blocks, your verdict must be for the defendant.

Answer: I decline to affirm that proposition, for the reason which I have just given ; that this power is a general power of supervision and control over the highways of the city which still remains in the corporate authorities of Philadelphia, and that it was for them to direct what character of pavement should be laid down, at the time the Belgian block on Ninth street, which is the subject of controversy and dispute here, was laid down.[14]

5. There is no authority in the city of Philadelphia to compel the defendant to pay the cost of paving the whole cartway of Ninth street, at the place in question, with Belgian blocks.

Answer: I decline to affirm that, because if they had the right to decide what kind of pavement should be put down, as I have said to you they had that right, then they have the right, under my view of the law, to direct that it should be paved with that kind of pavement, or such other kind of pavement as they may have thought to be best and most suitable for this partic-

Charge of Court below.

ular locality, from curb to curb.  As I said a moment ago, if there is an obligation on the part of the railway company to pave or re-pave and put the streets in repair under direction of city councils, that means the whole cartway of the street, and not the mere portion of it which is within the track of a railway laid upon the street itself; that that is not the cartway of the street, and that is not the part of the street which is to be paved; that is only a portion of that part of the street called a highway, which is required to be paved for the passage of general travel over the cartway of the city.[15]

6. The city councils had no authority to make their approval to the laying of defendant's railway conditioned upon their entering into a written obligation to observe and be subject to all ordinances of the city in relation to the passenger railway, then in force or thereafter to be passed.  The agreement thus compelled to be signed by the defendant did not bind them, so far as it exceeded the authority of the city to impose conditions.

Answer: I decline to affirm that proposition, because I think the city had the right to impose that condition upon this corporation before the corporation could enter upon the streets and lay its track upon them.  The act of assembly made the consent of the city to the exercise of that power by the defendant, a prerequisite to the right to use the streets of the city for the purposes of constructing upon them, the defined streets in the act, a city-passenger railway; and if the city had the right to refuse or to consent, it had the right to say upon what terms it would consent, and upon what terms it would refuse.  Perhaps, if the question were raised by the city with a view of preventing the exercise of this power under the act, that it had imposed impossible conditions on the railway company, that might be held to be an exercise of authority not warranted by the law; but the condition which is here imposed, and which is the one to which this point is directed, I hold was not an impossible condition nor an unreasonable condition, and therefore I decline to affirm this proposition.[16] [17]

7. If you find that the existing cobblestone pavement on Ninth street was capable of being repaired with the same stones, in the proper manner, and that to repair the same it was not necessary to re-pave with Belgian blocks, your verdict must be for defendant.

Charge of Court below.

Answer : I decline to affirm this proposition, because, if the city councils are, as I understand they are, vested with the power of determining what kind of pavement should be laid down, either as an original pavement or as a pavement to be substituted for the one which is to be re-paved,—which is to be taken up and put down, that power was properly exercised by the city of Philadelphia when they directed that this portion of the highway of the city should be re-paved with Belgian block, the discretion being given to them. Now, in the exercise of this power, they must exercise it within reason; they must exercise it with a proper consideration of the rights of the company, as well as with a proper consideration of what they owe to the public, to endeavor to secure proper highways in the city of Philadelphia, and, as I am asked to state to you this point, the city had no right to direct. The general proposition as thus submitted, I decline to affirm.[18]

8. Your verdict must be for the defendant.

Answer : Declined.[19]

So that you will find the question of fact which you have to consider is presented under the fourth, fifth, and sixth points of the plaintiff, which I will read to you again, and which I have affirmed :

" 4. That if the jury believe that the pavement on Ninth street above Race street was out of repair in 1886, and the company defendant failed to comply with notice to repair, the city had a right to make the repairs at the cost of the defendant."

Now, the jury will have to pass upon the question as to whether the pavement on Ninth street was out of repair, and out of repair in such a way that it was a proper thing for the city of Philadelphia to direct the company defendant to repair it, and if they failed to repair it, then the question is presented as to whether the city had the right to make the repairs at the cost of the defendant. If you find that the pavement on Ninth street above Race street was out of repair in 1886, and that the defendant company did not comply with the notice served upon them by the city, and that they failed to make the repairs under that notice, then the city had the right to make the repairs at the cost of the defendant. I affirm the proposition, leaving the question to you as to whether Ninth street

Charge of Court below.

above Race street was out of repair, and in such condition as to justify the city in calling upon the defendant to put it in proper repair and condition, that if you find they failed to put it in proper repair after that notice was given, the city had the right to make the repairs at the cost of the defendant.

Now, the plaintiff's fifth point, to which I want more particularly to call your attention as we go along, is :

" 5. That if the jury believe that in 1886 it was necessary to re-pave the pavement on Ninth street above Race street, and the company defendant failed to comply with notice to re-pave it with the kind of pavement suited to the traffic on the street, the city had a right to lay such a pavement at the cost of the defendant."

—I see you do not specify the kind of pavement?

Mr. Beitler : You will find it by looking at my copy.

By the court: There is no such modification here at all. This ought to be so modified : " That if the jury believe that in 1886 it was necessary to re-pave the pavement on Ninth street above Race, and that the company defendant failed to comply with notice to re-pave it with the kind of pavement suitable to the traffic on the street, the city had a right to lay such a pavement at the cost of the defendant." I affirm that proposition. That leaves to you the question that if the jury believe that in 1886 it was necessary to re-pave the pavement on Ninth street above Race street, and that the company defendant failed to comply with the notice to re-pave, the city had the right to lay such pavement.

" 6. If the jury believe that granite-block pavement is, considering the first cost and the item of repairs, as cheap if not cheaper than cobblestone pavement, and is the kind of pavement suited to the neighborhood and traffic of Ninth and Race streets, and with which the city is, as fast as its finances will permit, re-surfacing its main streets, then the city had the right to re-pave and repair Ninth street north from Race street with granite blocks, and the defendant company is liable for the just and proper cost thereof."

[Now, that submits to you, gentlemen, the question as to whether, considering the first cost of the Belgian-block pavement, that it is as cheap if not cheaper than cobblestone pavement. If you believe that fact, in the first place ; and that is

Charge of Court below.

put in this way for the purpose of presenting to the jury the question as to whether this requirement on the part of the city was a reasonable or unreasonable requirement. The city has not the arbitrary authority to do just exactly what it may please in regard to the orders which it may give to these companies to repair or to re-pave. Their orders must be reasonable and must be just, and such as, under the circumstances of the case, they ought to have given for the doing of that particular kind of work. Therefore, it is presented as a question in this point that if you believe it was as cheap as cobblestone, or cheaper than a cobblestone pavement, the inference which you will be asked to draw from it is that that was no unreasonable obligation imposed upon the company, that is, if they could lay down the Belgian-block pavement, taking the whole question in regard to the laying down and keeping it in repair, that it was as cheap or cheaper than cobblestone, that then it was no hardship to require them to lay down the Belgian-block pavement instead of the cobblestone. That question of fact is submitted to the jury, and if you find also that it is the kind of pavement suited to the neighborhood and traffic of Ninth and Race streets, and with which the city is, as fast as its finances will permit, re-surfacing its main streets—I think that had better be stricken out, because it is asserting a fact, and I will strike out that clause, because it is assuming something as to which you have offered no evidence, but you assume it that it is really doing that very thing—" then the city had the right to re-pave and repair Ninth street, north from Race street, with granite blocks, and the defendant company is liable for the just and proper cost thereof." With this modification I affirm that proposition.] [9]

—The jury returned a verdict in favor of the plaintiff for $1,026.50. Judgment having been entered, the defendant took this appeal, assigning for error:

1. The refusal of defendant's petition for change of venue.[1]

2. The overruling of defendant's objection to the jurisdiction.[2]

3, 4. The admission of the plaintiff's offers.[3] [4]

5–9. The answers to the plaintiff's points.[5 to 9]

10, 11. The answers to the defendant's points.[10] [11]

13–19. The answers to the defendant's points.[13 to 19]

Arguments.

*Mr. J. Howard Gendell* and *Mr. John G. Johnson* (with them *Mr. D. W. Sellers*), for the appellant:

1. It was the duty of the court below to grant the petition for a change of venue, and the proceedings after refusal were without jurisdiction. Under this head we contend: (*a*) That all the prerequisites which the act demanded existed; (*b*) that no contrary facts could have been known by the learned judge; (*c*) that it was not necessary for the defendant to adduce testimony in corroboration of its affidavit; (*d*) that it was not competent for the plaintiff to contradict the affidavit; (*e*) that even if it were competent for it to do so, it produced no testimony in contradiction; (*f*) that, under these circumstances it was the legal duty of the court below to be satisfied of the truth of the facts alleged, and to award a change of venue. The petitioner swore that local prejudice existed. The learned judge does not find that he did not believe it. He could not have so found. In what way could the affidavit have been supported? In what way disproved? The question was not whether some people believed the fact and others did not, but whether or not it appeared by the oath of the party that local prejudice existed, and that in his opinion a fair trial could not be had. General principles: 3 Bl. Com., *383; Southampton Br. Co. v. Local Board, 8 Ell. & Bl. (92 E. C. L. R. 803). Legislation: § 1, act of April 14, 1834, P. L. 395; act of April 28, 1870, P. L. 1292; Vankirk v. Railroad Co., 76 Pa. 66; Williamsport R. Co. v. Cummins, 8 W. 450; Hughes v. Railroad Co., 30 Pa. 517; act of March 30, 1875, P. L. 35; Williamsport v. Commonwealth, 90 Pa. 498; Newlin's Pet., 123 Pa. 541.

2, 3. The effort of the city is to pave at the defendant's expense, with Belgian block, a street heretofore paved with cobblestones, which could have been re-paved with like material. As shown by the testimony, there was no necessity for any new paving; the old cobblestones were in existence and could have been replaced. And the city had no right to compel the defendant thus to pay for a new and different pavement, either under the act of incorporation of defendant or under the ordinance of 1857. Under the incorporating act, the duty imposed upon the company was to keep the streets and avenues traversed by it "in perpetual good repair." So, under the passenger-

railway act-of April 11, 1868, P. L. 849.  And the sole object
of the proviso to § 8 of the act of April 15, 1858, subjecting
the defendant to the ordinance of 1857, was to subject it to
the regulations therein contained, not to impose upon it a duty
with regard to the streets larger than that specified in the
statute itself.  Moreover, the ordinance of 1857 being an ordi-
nance to regulate, if it impose upon the defendant a greater
duty than the defendant's incorporating act does, is repealed
by the act of April 11, 1868.  Wistar v. Philadelphia, 80 Pa.
505, conceded the right of the city to experiment with different
kinds of paving, but held it to be the duty of the city to pay
the expense; followed by Philadelphia v. Wistar, 92 Pa. 404,
and by Wistar v. Philadelphia, 111 Pa. 604, 610.  And in no
event, can the defendant be made to pay for re-paving, save
where it is necessary.  An ordinance requiring it when unnec-
essary would be unreasonable and invalid: Pittsburgh's App.,
115 Pa. 4; Commissioners v. Gas Co., 12 Pa. 318; Philadel-
phia v. Railway Co., 7 Phila. 321.

4, 5, 6.  Nothing in the "written obligation" of July 29,
1858, bound the defendant to do more than was imposed upon
it by its charter.  The ordinances the defendant bound itself
to obey were such only as could be validly and legally enacted
by the councils, and to those it was in any event subjected.
If the obligation bound the defendant to do more than was re-
quired by its charter, it was not enforceable.  The ordinance
of May 5, 1858, gave to the defendant the consent of councils
to use the streets; but the defendant's charter came from the
sovereign which prescribed the terms of the grant.  No right
was given to any other body to alter these terms.  The sole
power given was to say whether the grant should or should
not be enjoyed upon the conditions the legislative body had
prescribed, and not upon any other conditions.  The point in-
volved in these propositions has been too frequently decided
by this court to be considered as open or as capable of discus-
sion: Pittsburgh's App., 115 Pa. 4; Faust v. Railway Co., 3
Phila. 164.  In this last case it was said, STRONG, J.: "But it
is said councils may pass ordinances inconsistent with the ex-
ercise of the corporate rights of the defendants, and restrictive
of their chartered privileges; and that an agreement to ob-
serve such ordinances would be a consent to give up their

Arguments.

powers. To this I answer, this is supposing a legal impossibility. The councils can pass no such ordinances. They have no such power, and their legislative authority can be enlarged by no agreement." Moreover, the proper authorities of the city never in fact exercised the power to order a new pavement, even if it were vested with it. Such power could be exercised only by virtue of and under an ordinance of councils. Councils are a legislative not an executive body; and it is essential to legislation that it shall have the assent of the mayor. The resolution of councils of May 6, 1886, ordering a new pavement to be substituted for an old one, was not legislation and amounted to nothing. And the ordinance of December 12, 1881, under which the power was claimed to have been exercised, was applicable only to the paving of streets not already paved.

*Mr. Abraham M. Beitler* and *Mr. Charles F. Warwick*, City Solicitor, for the appellee:

. 1. The fourth and fifth paragraphs of § 1, act of March 30, 1875, P. L. 35, are those under which the application of the defendant, based on the affidavit of the president of the company, was made for a change of venue. The first question is, to whom must it appear by affidavit that a fair and impartial trial cannot be had? Surely, the answer is, to the court before whom the application is made. If a change of venue is to be granted, without any discretion in the case, merely upon the presentation of the affidavit, then every whim, every fancy, even every desire for delay in a cause, could be taken advantage of. The act requires more than the mere making of the affidavit. It means that the statements set forth shall be true; that the truth shall appear to the court, and, further, that by reason thereof a fair and impartial trial cannot be had. The matter is clearly within the discretionary power of the court. Under the interpretation given by the defendant, the court is deprived of any discretion whatever. Yet, under § 2, the change of venue is to be ordered if the court or the judge shall be "satisfied of the truth of the facts alleged." Even though the facts may be true, in the belief of the parties concerned, it must further appear to the satisfaction of the court that local prejudice exists, and that by reason thereof a fair and impartial trial cannot be had.

2. The " written obligation " of July 29, 1858, of the Girard College railway company, was offered in evidence as part of the res gestac, and not as constituting any basis of claim on the part of the city larger or more extensive than the company's charter. It was the voluntary act of the company's stockholders, and it bound the company to " observe and be subject to all ordinances of said city in reference to passenger railways now in force or hereafter to be passed." It stood unchallenged from 1858 to 1891. But, above all and beyond all is the plain provision of the charter of the Girard College company, subjecting it to the ordinance of July 7, 1857; and the ninth section of that ordinance expressly provides : " Any passenger-railroad company which is now or may be hereafter incorporated in the city of Philadelphia, shall, by their proper officer or officers who shall sign the same, file in the office of the city solicitor a written obligation to comply with the provisions of this ordinance." Thus, the corporate agreement was filed because the charter required it to be. But, even without the charter provision, it is submitted the agreement binds the company. Speaking of councils granting assent to the occupancy of streets, Mr. Justice STERRETT, in Pittsburgh's App., 115 Pa. 4, says : " They have no right to couple their assent with any restriction not imposed by the act, unless the company agrees to accept the same and be bound thereby ; and even then, the conditions or restrictions, so accepted by the company, must harmonize and in no wise conflict with the provisions of the act." The question would seem to be ruled by Pittsb. etc. Ry. Co. v. Birmingham, 51 Pa. 41; Pittsb. etc. Ry. Co. v. Pittsburgh, 80 Pa. 72.

3. It will be noted that the city offered in evidence only the following ordinances : July 7, 1857, May 5, 1858, April 1, 1859, and December 12, 1881. The first the company was undoubtedly bound to observe. The second has no bearing, except as part of the res gestæ, showing how the company secured the councils' consent, and explaining the filing of the corporate agreement. The third was introduced, not to show any additional obligation on the company, but to prove that the first paving of the street was not done by the company; and its effect is shown in this court in Philadelphia v. Evans, 139 Pa. 483. The fourth ordinance has no special bearing on the de-

fendant company; it was offered and admitted as part of the res gestæ, to show that the city in 1881 abandoned the use of cobblestone pavements, and has since prohibited all its citizens from using cobbles in paving. Hence, the admission in evidence of the agreement of July 29, 1888, did not in this case prejudice the defendant, even if it was not binding. Moreover, the company admits that it is bound by the ordinance of July 7, 1857, but objects merely that the learned judge told the jury that the company was bound by the act of assembly and by the corporate agreement. That it is bound there is no dispute; whether bound only by legislative enactment, or by the act and the corporate agreement both, it is submitted makes no difference.

4. One of the assignments, the eleventh, raises the point that the defendant cannot be required to re-pave Ninth street from curb to curb, a point that has not been made for years. There never has been any doubt as to the duty to keep in repair the entire roadway from curb to curb. Numerous authorities sustain the proposition; there are none to controvert it. In Philadelphia the question has been decided several times: Philadelphia etc. Ry. Co. v. Philadelphia, 2 W. N. 639; Thirteenth St. Ry. Co. v. Philadelphia, 13 W. N. 487; Campbell v. Railway Co., 139 Pa. 522. See, also, Pittsb. etc. Ry. Co. v. Birmingham, 51 Pa. 41; Pittsb. etc. Ry. Co. v. Pittsburgh, 80 Pa. 72; Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219. The city's contention is, not that it can at defendant's expense "re-pave these streets whenever and as often as the councils shall see fit to adopt a new style of paving," but that, having finally and for all time abandoned cobblestone pavements, following the lead of all large cities, and having adopted Belgian block, asphalt, and vitrified-brick pavements, the best the world knows, it has a right to require the railway companies to replace on their streets the antiquated and worn-out cobblestone pavement, by a modern, more durable and better pavement. This is the whole of the city's contention. The defendant's counsel do not show an appreciation of the fact that the ordinance of 1857 is written in the company's charter by the act of incorporation, and insist on treating the city's action as an experiment, citing the act of April 11, 1868, as protecting them. That act was a general act; and if a repeal of prior legislation

beneficial to the city was intended by it, it utterly failed to accomplish that object, as there was nothing in its title to give notice : Pierie v. Philadelphia, 139 Pa. 573; Phœnixville Bor. Road, 109 Pa. 44; Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219.

OPINION, MR. JUSTICE STERRETT :

This suit was brought against appellant to enforce payment of the cost of re-paving Ninth street from Race to Sergeant street, in the city of Philadelphia, with interest thereon. The city authorities, having determined that it was necessary to re-pave that portion of Ninth street, and claiming that appellant company, under its charter and contract obligations, was bound to do the work at its own expense, notified it to do so. The company denied its obligation, and refused to re-pave. The city then advertised for bids, awarded the contract to the lowest bidder, and the work was done at the cost of and was paid for by the city. There was no question as to the amount of the claim. The sole contention was in regard to appellant's liability, and that depended on the questions of law and fact involved. They were determined in favor of the city, and a verdict in her favor for $1,026.50 was rendered. From the judgment entered on that verdict this appeal was taken.

After the cause was at issue, but before it was called for trial, the defendant company presented a petition, signed and affirmed to by its president, setting forth :

" That this action is for the cost of re-paving certain streets of the city of Philadelphia with an alleged improved pavement, and not only involves a very large sum directly in controversy in this case, but will be a precedent, and possibly an adjudication and estoppel for similar claims in the near future against this company amounting to many hundreds of thousands of dollars; and, in addition thereto, will greatly affect similar litigation and claims against other railway companies in this city, amounting in the aggregate to millions of dollars.

" And your petitioner further shows that the plaintiff is a municipality in this county and is coterminous with the county, and that public attention has been attracted, to an unusual extent, to the claim which is the subject-matter of the suit; that a large number of the inhabitants of this county have an inter-

Opinion of the Court.

est in the question involved adverse to petitioner; that there are issues of fact as well as of law to be tried; and that local prejudice exists, and a fair trial cannot be had in this county.

"Wherefore your petitioner prays for a change of venue herein."

That application was refused, and the trial proceeded before the learned president of Common Pleas No. 1. The refusal to grant the application for a change of venue is the subject of complaint in the first and second specifications.

In § 23 of article III., our constitution declares: "The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law." The act of March 30, 1875, passed to carry that provision into effect, provides:

"§ 1. That changes of venue shall be made in any civil cause in law or equity depending in any of the courts of this commonwealth in the cases following, to wit:

1. "Whenever the judge, who by law is required to try or hear the same, shall be personally interested in the event of such cause, or in the question to be determined thereby.

2. "Whenever the title under which the parties, or either of them, claim in any such cause, shall have been derived from or through such judge, and he shall be liable thereunder, or whenever he shall hold under the same title with either of the parties in the said cause.

3. "Whenever any near relative of such judge shall be a party to any such cause or interested in the event thereof.

4. "Whenever the county in which such cause is pending, or any municipality therein, or the officials of any such county or municipality are parties thereto, and it shall appear by the oath of the party desiring such change of venue that local prejudice exists, and that a fair trial cannot be had in such county.

5. "Whenever a large number of the inhabitants of the county in which such cause is pending, have an interest in the question involved therein adverse to the applicant, and it shall appear by the oath of such applicant that he believes he cannot have a fair and impartial trial.

"§ 2. The applicant for any such change of venue may apply to the court in term time, or to any law judge thereof in

Opinion of the Court.

vacation, by petition setting forth the cause of the application, which shall be accompanied by his affidavit of the truth of the facts alleged therein, and that the said application is not made for the purpose of delay and praying a change of venue; and, after reasonable notice thereof having been given to the opposite party or his attorney, the said court or judge shall, if satisfied of the truth of the facts alleged, award a change of venue of the said cause to some county where the cause complained of does not exist."

The first three paragraphs above quoted are inapplicable to this case. The reasons assigned in the petition are not within the purview of either. They are solely within that of the fourth and fifth paragraphs, one of which provides for a change of venue when it shall appear "that local prejudice exists and that a fair trial cannot be had," and the other when "it shall appear by the oath of such applicant that he believes he cannot have a fair and impartial trial." To whom must these matters appear? Certainly, not to any one save the court or judge who passes upon the application. It was never intended that the mere statement of facts coming within the purview of either of these two paragraphs, should of itself entitle the petitioner to a change of venue. The act requires more than the mere making of the affidavit. It means that the statements set forth shall be true; that their truth shall appear to the court or judge who hears the application, and, further, that, by reason thereof, a fair and impartial trial cannot be had. In the second section of the act, after stating to whom the application shall be made, what it shall set forth, etc., it is provided that "the said court or judge shall, *if satisfied of the truth of the facts* alleged, award a change of venue," etc. It is very evident from this that it is not enough that the applicant be convinced of the truth of what he alleges; the court or judge must be satisfied of their truth. If all others concerned are fully satisfied of their truth, and the court or judge is not, the change of venue should not, and cannot, consistently with the letter as well as the spirit of the act, be made. Nobody can for a moment doubt that the learned president of the court below was not satisfied. If he had been, he would have granted the application. We are quite clear that there is

Vol. cxliii—30

·nothing in the record that would justify us in sustaining either the first or second specification.

The third, sixteenth, and seventeenth specifications of error ·may be considered together. The first of these is to the admission in evidence of the agreement of the Girard College Passenger Railway, executed July 29, 1858. The others are to the answers of the court to defendant's sixth point, which point is as follows:

, " The city councils had no authority to make their approval to the laying of defendant's railway conditioned upon their entering into a written obligation to observe and be subject to all the ordinances of the city, in relation to passenger railways, then in force or thereafter to be passed. The agreement thus compelled to be signed by the defendants did not bind them, so far as it exceeded the authority of the city to impose con·ditions."

The agreement referred to was rightly admitted in connection with the agreement of merger between that company and the Ridge Avenue & Manayunk Passenger Railway Company, which were consolidated in January, 1872, and thereafter known as the Ridge Avenue Passenger Railway Company, the appellant, the ordinance of July 7, 1857, referred to in the charter of said Girard College Passenger Railway Company, and other evidence. In refusing to affirm defendant's sixth point, above quoted, the learned judge correctly said:

" The city had a right to impose that condition upon the corporation before it could enter upon the streets and lay its track upon them. The act of assembly made the consent of the city to the exercise of that power by the company, a prerequisite to the right to use the streets of the city for the purpose of constructing upon them, the streets defined in the act, a city-passenger railway; and, if the city had a right to refuse or consent, it had a right to say upon what terms it would consent, and upon what terms it would refuse. Perhaps, if the question were raised by the city, with the view of preventing the exercise of this power under the act, that it had imposed impossible conditions on the railway company, that might be held to be an exercise of authority not warranted by law; but the condition which is here imposed, and which is the one to which this point is directed, I hold was not an impossible con-

dition nor an unreasonable condition, and therefore I decline to affirm this proposition."

The agreement, binding the company to "observe and be subject to all ordinances of said city in reference to passenger railways, now in force or hereafter passed," was the voluntary act of the company. It was executed and filed pursuant to the unanimous direction of the stockholders, and has stood unchallenged from 1858 until this contention arose. But, as we shall see presently, that agreement has little if any effect on the liability of the company, so far as the matter involved in this contention is concerned. It is a mistake to suppose that, if that agreement can be repudiated, the company is at liberty to ignore the provisions of the ordinance of December 12, 1881, forbidding the paving with cobble or rubble, except between tracks of railways, etc.

The contention of the defendant as to the invalidity of the agreement, under consideration, is not sustained by anything that was decided in Pittsburgh's App., 115 Pa. 4. As will appear by an examination of that case, its facts are wholly unlike those of the present case. Among other things, councils in that case undertook, as a condition of their assent, to deprive gas companies of the right of appeal expressly given them by the act under which they were incorporated. That was attempted by making councils themselves a court of last resort, and exacting a bond in large amount binding them to submit to that self-constituted tribunal. The animus of this and other conditions, clearly violative of the corporate rights of the companies and ultra vires, was so apparent that the companies affected thereby refused to submit. They declined to recognize any such usurpation of authority, and entered into no agreement. Referring to the unreasonable and unlawful character of the conditions imposed in that case, we held that councils had no right to couple their assent with any condition or restriction not imposed by the act, unless the gas company agreed to accept the same and be bound thereby; and even then the conditions or restrictions so accepted by the company must harmonize and in nowise conflict with the provisions of the act incorporating such companies. The case before us is very different. As we shall presently see, the terms of the agreement are not in conflict with the provisions of defendant company's

charter. They are neither unlawful nor unreasonable. A meeting of the stockholders was called for the purpose of considering the ordinance. They agreed to accept its provisions, and authorized their officers to execute the agreement. It was accordingly executed and filed.

A question similar to that under consideration was ruled in Pittsb. etc. Ry. Co. v. Birmingham, 51 Pa. 41, and Pittsb. etc. Ry. v. Pittsburgh, 80 Pa. 72. The Pittsburgh & Birmingham Passenger Railway Company was authorized to construct and operate a railway along Carson street, in the boroughs of Birmingham and South Pittsburgh, both of which were afterwards consolidated with the city of Pittsburgh. The eighth section of the company's charter provided " that the said railway company shall not be permitted to use or occupy any of the streets of the said city of Pittsburgh, or streets of said boroughs, for the purposes of their railway, until the consent of the councils of said city and boroughs is first thereto had by ordinance duly passed." The consent of both boroughs was given upon certain terms expressed in ordinances passed by them respectively. That of Birmingham was given in the following words : " Said railway company, in addition to other requirements of the charter, shall keep Carson street in perpetual good order and repair, from curb to curb, its whole length, from the time of the acceptance of this ordinance." That of South Pittsburgh was as follows : " And provided, also, that said railway company shall keep said Carson street in a good and sufficient state of repair, from curb to curb, to the satisfaction of the committee on streets, . . . . and also keep said Carson street in a reasonable sanitary condition." The company having refused to remove from Carson street the dirt that accumulated by reason of its ordinary use as a thoroughfare, the court, in an action brought by the borough to recover the cost of cleaning the street, held that " the duties of defendants below arise, not only from the act of assembly, but also from their contract with the plaintiffs, the borough authorities, without whose consent they could not have used and occupied Carson street: " Pittsb. etc. Ry. Co. v. Birmingham, 51 Pa. 42.

Subsequently, after consolidation of the boroughs with the city of Pittsburgh, a mass of débris, stones, and gravel was thrown upon Carson street by an unusual rain-fall. The city

was requested by the company to remove the obstruction, clean the street, etc., and, having refused to do so, it was done by the company, and suit was brought against the city to collect the cost thereof. This court held that there could be no recovery. Referring to the act of incorporation and ordinance giving consent of the borough, Mr. Justice MERCUR said:

" The manifest intention of the statute and of the ordinance was to transfer to the company the exclusive duty of keeping in repair all that portion of the street which lies between curbs. Hence, in the words of the former, the company was to 'keep the street in perpetual good repair;' and, in those of the latter, 'in a good and sufficient state of repair.' Neither contains any intimation that the municipality was to repair under any contingency. But, to make it more clear that the company assumed the whole duty of keeping the street in repair, the ordinance required it to be so kept to the satisfaction of the committee on streets. This practically gave to the municipality the power of deciding on the goodness and the sufficiency of the repairs made by the company. Still further, the ordinance required the company to keep the street 'in a reasonable sanitary condition:'" Pittsb. etc. Ry. Co. v. Pittsburgh, 80 Pa. 74.

By reference to second proviso to seventh section of the act of April 15, 1858, incorporating the Girard College Passenger Railway Company, authorizing it to occupy Ninth street, etc., it will be seen " that the city councils may from time to time, by ordinance, establish such regulations in regard to said railway as may be required for the paving, re-paving, grading, culverting, and the laying of gas and water pipes in and along said streets, and to prevent obstructions thereon." We are unable to see that there is anything ultra vires in the ordinance granting consent, or that there is anything in the company's agreement accepting same, and consenting to be bound thereby, that in any manner conflicts with the provisions of its charter. As heretofore stated, the defendant company was formed by merger of two passenger-railway companies, and assumed the name of Ridge Avenue Passenger Railway Company. By that merger, the duties and obligations of the respective companies devolved on the new one. The street for the re-paving of which this suit was brought, was occupied by the Girard

College Passenger Railway Company, chartered by the act of April 15, 1858. By § 8 of that act the company was, in express terms, declared "subject to an ordinance of the city councils entitled 'An ordinance to regulate passenger railways in the city of Philadelphia,' approved the seventh day of July, A. D. 1857." That ordinance provided, inter alia, as follows:

"§ 1. . . . . That all passenger railroad companies within the city of Philadelphia shall be subject to the restrictions, limitations, terms, and conditions hereinafter provided; and any such company, before entering upon any road, street, avenue, or alley, within the limits of the said city, shall be understood and deemed to be subject thereto, upon the conditions hereinafter prescribed.

"§ 2. That it shall be the duty of said companies, or any of them, to conform to the surveys, regulations, and gradients as they are now or may hereafter be established by law. They shall submit all proposed plans, courses, styles of rails, and the manner of laying the same to the board of surveys and regulations for their approval and sanction; . . . . . to lay flagstones or crossings along the line of the paved streets upon which the rails are laid, at intervals not exceeding two hundred and fifty feet," etc.

"§ 3. That all railroad companies as aforesaid, shall be at the entire cost and expense of maintaining, paving, repairing and re-paving that may be necessary upon any road, street, avenue, or alley occupied by them. That for the convenience of the public, it shall also be the duty of the said companies to clear the streets or other public highways that they may occupy, of snow or any obstruction placed therein by such companies, when the same impedes the travel upon said highways," etc.

"§ 4. That it shall be the duty of any company as aforesaid, when requested to do so by the chief commissioner of highways, to remove any obstruction, mend or repair their road, pave or re-pave the highways, as hereinbefore provided; and should they refuse or neglect to do so for ten days from the date of such notice, then, and in such case, councils may forbid the running of any car or cars upon the said road until the same is fully complied with; and the city reserves the right in all such cases to repair or re-pave such streets, and the expense thereof shall be a judgment upon the road, stock, and

effects of such company, recoverable as judgments are now recoverable by the city of Philadelphia."

The remaining five sections of the ordinance provide in detail for other matters which have no special bearing on this contention, except to show, what is already quite apparent, that the permission given to occupy streets, etc., is in subordination to the general authority and power of the municipal authorities over the streets, etc.

The ordinance thus referred to in the act of assembly is, in effect, read into and made part of the company's charter. It is as much a part of the law of its being as any part of the act of assembly itself; and, by the merger and consolidation aforesaid, it in fact became an integral part of defendant company's charter. The third section declares, in plain and unequivocal language, that the company shall be at the entire cost and expense of maintaining, paving, repairing, and re-paving that may be necessary upon any road, street, lane, or alley occupied by it. Considered in connection with other provisions of the company's charter, the words here employed are not susceptible of any other than their ordinary meaning.

It has never been seriously doubted, nor can it be, that the duty to repair or to re-pave, when either is adjudged necessary, extends to the entire roadway from curb to curb. In Phila., etc. Ry. Co. v. Philadelphia, 2 W. N. 639, a similar question was mooted; and, in a very able opinion by the learned president of Common Pleas No. 4, it was held that the railway company was bound to keep in repair the entire roadway of the streets it occupied, not only the space between the rails, but the entire roadway from curb to curb. To the same effect are Thirteenth St. Ry. Co. v. Philadelphia, 13 W. N. 487; Campbell v. Railway Co., 139 Pa. 522, Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219; Pittsb. etc. Ry. Co. v. Birmingham, and Pittsb. etc. Ry. Co. v. Pittsburgh, supra.

By whom is the necessity for repairing or re-paving, etc., to be determined? Certainly, not by the company itself, but by the municipal authorities. As a general rule, it is their special province to determine when re-paving is needed, and how it shall be done, whether with same kind of material as before, or with a different and better material. It was never intended to transfer the duty of determining these matters, or either of

them, from the municipal authorities to any one else.  The proposition that, because cobblestone was the kind of pavement ordinarily in use when defendant company was chartered, it is in no event bound to re-pave with any other and more expensive kind of material, etc., is wholly untenable.  It cannot be entertained for a moment.  It was never contemplated that the railway company would continue to exist and perform its corporate functions in a cobblestone age.  It was called into being with the view of progress.  The duties specified in its charter were imposed with reference to the changes and improved methods of street paving which experience might sanction as superior to and more economical than old methods.  In other words, the company is bound to keep pace with the progress of the age in which it continues to exercise its corporate functions.  The city authorities have just as much right to require it to re-pave at its own expense with a new, better, and more expensive kind of pavement as they have to cause other streets to be re-paved, in like manner, at the public expense.

Six points for charge were submitted by the plaintiff, all of which were rightly answered by the learned judge.  His answers appear of record, and require no further comment, except to say that the fifth and sixth points were more favorable to the defendant company than any evidence in the case warranted.  The first three presented questions of law, and, for reasons given in the answers thereto, they were properly affirmed.  As requested in the fifth and sixth points, he instructed the jury :

"(1) If the jury believe that, in 1886, it was necessary to re-pave the pavement on Ninth street, above Race, and the company defendant failed to comply with notice to re-pave it with the kind of pavement suited to the traffic on the street, the city had a right to lay such a pavement at the cost of defendant.

"(2) If the jury believe that granite-block pavement is, considering the first cost and the item of repairs, as cheap if not cheaper than cobblestone pavement, and is the kind of pavement suited to the neighborhood and traffic of Ninth and Race streets, and with which the city is, as fast as its finances will permit, re-surfacing its main streets, then the city had the right to re-pave and repair Ninth street north from Race street

with granite blocks, and the defendant company is liable for the just and proper cost thereof."

These instructions were more favorable to the defendant company than it was entitled to. The verdict, as has been stated, was in favor of the city. By necessary implication, the jury must have found, as the basis of their verdict, the facts of which the plaintiff's fourth to sixth points, inclusive, are predicated. The facts thus established by the finding of the jury, in connection with the charter obligation and duty of the railway company, as correctly explained by the court, entitled the plaintiff to recover.

The eight points for charge submitted by defendant were rightly refused, for reasons given by the learned judge in his answers. It follows that neither of the specifications of error is sustained.

Judgment affirmed.