The City of Philadelphia *v.* The Thirteenth and Fifteenth Streets Passenger Railway Company of Philadelphia, Appellant.

*Street railways—Merger of companies—Franchises and obligations.*

Where a street railway company is formed by the merger of two other previously existing companies, and the merger is ratified by an act of assembly wherein certain rights existing in the old companies are surrendered and the old franchises confirmed and new ones granted, the company accepts the provisions of the act subject to all the incidents, duties and obligations which attached to the old companies under their charters, and the act incorporating the new company is its operative and controlling charter; but the two original charters so far as unchanged and confirmed by the later act contain its grants and limitations, as well as its burdens and obligations.

*Charter—Street paving—Ordinances—Replacing old paving with new—Contingent occupancy.*

In the charter of one of the original companies it was provided, " That the councils of the city of Philadelphia may from time to time by ordi-

nances establish such regulations in regard to said railway as may be required for the purposes of paving, repaving, grading, . . . . and the said company shall conform to the grades established by councils of the several streets and avenues traversed by the said railway. . . . The streets thus occupied by said company shall be by them kept in good order and repair at their own proper expense; " and in the charter of the other of the original companies it was provided, that " the said company shall be compelled to keep in constant repair that portion of the street which they use and occupy and be subject to such ordinances of councils as relate thereto, not inconsistent with this act." *Held*, (1) that both provisions are general, applicable to all streets on which tracks are laid, and continuing, that is, applying from time to time whenever repairs may become necessary; (2) that the franchises to occupy and the obligations to keep in repair are coextensive, and that whatever the duty of a municipality would have been as to repairs upon the streets where the tracks are laid is now the duty of the railway company laying and using the tracks, which included the whole width of the streets; (3) that the provision in the charter that " the said company . . . . shall be compelled to keep in constant repair that portion of the street which they use and occupy and be subject to such ordinances of councils as relate thereto," includes existing as well as future ordinances; and that the general ordinance of July 7, 1857, which provides, " That all passenger railway cômpanies shall be at the cost and expense of maintaining, paving, repairing and repaving that may be necessary upon any street . . . . occupied by them," means the entire street occupied and not a portion of the same, and under said ordinance it is the duty of said company to repair and repave the entire roadway from curb to curb; (4) that where the duty to repair exists it extends to the replacement of an old pavement by a new one of a different and improved kind, and the fact that the occupation of the street is terminable upon certain contingencies which may happen at any time and at the will of the city does not destroy the obligations to keep the street in repair so long as it is occupied.

*Neglect to repair by street railway—Notice—Stopping cars—Damages.*

The ordinance of July 7, 1857, sec. 4, provides, " It shall be the duty of any company as aforesaid . . . to pave or repave the highways as hereinbefore provided and should they refuse or neglect to do so for ten days from the date of such notice . . . . councils may forbid the running of any car or cars upon said railroad until the same is fully complied with." *Held*, that under said ordinance the city had the right to stop the cars while the repaving was being done, and could not be made to respond in damages for so doing.

Argued Feb. 1, 1895. Appeal, No. 170, July T., 1894, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1893, No. 74, on point reserved. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Assumpsit.   Before THAYER, P. J.

On April 8, 1859, the Thirteenth and Fifteenth Streets Passenger Railway Company was chartered to lay out and construct a railway on certain designated streets within the city of Philadelphia, in which Broad street was not included.   On May 16, 1861, the Navy Yard, Broad Street and Fairmount Railway Company was granted a charter, empowering it to occupy certain streets with tracks, including a double track along Broad street to Spring Garden, with right to extend the same, and providing in said act: " That the said company shall be compelled to keep in constant repair that portion of the street which they use and occupy, and subject to such ordinances of councils as relate thereto not inconsistent with this act," and providing in section 9 of said act: " That when the Pennsylvania Railroad Company shall complete their connection with the Philadelphia, Wilmington and Baltimore Railroad, and the councils of the city of Philadelphia shall direct the removal of the rails now laid on Broad street from South street to Chestnut street, the Navy Yard, Broad Street and Fairmount Railway Company shall, with the appurtenances thus removed, be required to place said Broad street from South to Chestnut street in such condition, as far as the paving, curbing, and macadamizing is concerned, as will accord with any plan which may be adopted for the improvement of said street by the councils of said city." Afterwards, and prior to April 4, 1868, the Thirteenth and Fifteenth Streets Passenger Railway Company and the Navy Yard, Broad Street and Fairmount Railway Company were duly merged and consolidated into the Thirteenth and Fifteenth Streets Passenger Railway Company of the city of Philadelphia, and all the rights and franchises of the Navy Yard, Broad Street and Fairmount Railway Company became vested by this merger in the defendant company.   On the 27th of March, 1873, an act of assembly was passed, whereby in consideration of the renunciation and surrender by the Thirteenth and Fifteenth Streets Passenger Railway Company " to the commonwealth of all rights to construct any railroad, railway, or tramway upon Broad street possessed or claimed by them under the said merger of the corporate rights and franchises of the Navy Yard, Broad Street and Fairmount Railway Company, or otherwise howsoever, and the discontinuance of all

legal proceedings to enforce such rights, then, upon the said company making such surrender, and filing the same (within a stipulated time) in the office of the secretary of the commonwealth, and accepting the provisions of said act, all the corporate rights, privileges, and franchises heretofore granted to the Navy Yard, Broad Street and Fairmount Railway by the act of ' May 16, 1861,' excepting those so surrendered shall be and thereupon are hereby granted and confirmed to and declared to be fully vested in the said the Thirteenth and Fifteenth Streets Passenger Railway Company, under and by virtue of said merger ; that is to say, the privilege of constructing and operating a single or double railway passenger track or tracks upon any part of said Broad street, from time to time, south from Carpenter street as far south as said street may be opened, and north from Columbia avenue as far north as said street may be opened, together with the privilege of maintaining the now existing connections between said tracks and the company's tracks on Thirteenth and Fifteenth streets ; and in further consideration of such surrender, no franchise or privilege to construct a track or tracks or any artificial tramway for the conveyance of passengers for hire, upon any portion of said Broad street or upon Thirteenth or Fifteenth streets, or other of said company's connections, or to run any cars upon any part of said routes, shall be hereafter granted to any person or persons, or body politic : Provided, That as each six consecutive squares of Thirteenth and Fifteenth streets northward from Columbia avenue, as well as the street or avenue at the northern terminus thereof, running at right angles to and joining Thirteenth and Fifteenth streets, or so much thereof as may be necessary to form circuits, shall be, from time to time, opened, graded and paved, the Thirteenth and Fifteenth Streets Passenger Railway Company shall remove their tracks from the six squares of North Broad street between the same cross streets, and shall lay them upon corresponding six squares of Thirteenth and Fifteenth streets and said northernmost cross street, for the purpose of completing their circuits or connections, and that when the depot of the Philadelphia, Wilmington and Baltimore Railroad Company, or its successors, shall be removed from Broad street between Washington avenue and Carpenter street, then as each six consecutive squares of Thirteenth and

Fifteenth streets southward from Carpenter street, as well as the street or avenue at the southern terminus thereof, running at right angles to and adjoining Thirteenth and Fifteenth streets, or so much thereof as may be necessary to form circuits, shall be, from time to time, opened, graded and paved, the Thirteenth and Fifteenth Streets Passenger Railway Company shall remove their tracks from the six squares of South Broad street between the same cross streets, and shall lay them upon the corresponding six squares of Thirteenth and Fifteenth streets and the said southernmost cross street, for the purpose of completing their circuits or connections, and all acts or parts of acts inconsistent herewith are hereby repealed."

Section 2. "If the Thirteenth and Fifteenth Streets Passenger Railway Company (having accepted the provisions of this act as aforesaid) shall not at any time proceed to comply with the same, after notice in writing to them by the mayor, the chief commissioner of highways, or the common council of the city of Philadelphia to do so, then the chief commissioner of highways is hereby empowered and directed to remove the tramway and rails of the said Thirteenth and Fifteenth Streets Passenger Railway from Broad street, and repave and repair the bed of said street forthwith, at the expense of said company."

The defendant company having filed its renunciation and surrender of its rights as required, laid and operated its tracks upon portions of Broad street, by virtue of said act. On April 2, 1890, an ordinance of council was passed appropriating money for paving North Broad street, with an improved sheet asphalt pavement, and defendants declined to pave any of the street beyond its own roadbed. After notice given by the city for ten days, the defendant's cars were not permitted to run over said portion of said street. The street was torn up for the purpose of repaving and the track removed while the work was being done. The city brought suit against the defendant for paving upon Broad street and also for disbursements made by it for paving upon certain other streets.

At the trial plaintiff's counsel offered in evidence act of May 8, 1859, P. L. 431, which is the charter of the Thirteenth and Fifteenth Streets Railway Company. Objected to by Mr. Biddle, unless the offer is restricted as to liability other than

Broad street. Objection overruled, exception for defendant and bill sealed. [1]

Plaintiff's counsel offered in evidence act of May 16, 1861, P. L. 691. Objected to. Objection overruled. Exception for defendant and bill sealed. [2]

Plaintiff's counsel offered in evidence act of March 27, 1873.

Defendant's counsel objected on the ground that it imposes no liability on defendant with respect to Broad street. Objection overruled. Exception for defendant and bill sealed. [3]

Plaintiff's counsel offered in evidence ordinance of July 7, 1857, Book of Ordinances for that year, page 248, calling attention particularly to the first and fourth sections of the ordinance. (Ordinance read.) Objected to. Objection overruled. Exception for defendant and bill sealed. [4]

Plaintiff's counsel offered in evidence ordinance of Oct. 5, 1863, Book of Ordinances for that year, page 283. (Ordinance read.) Objected to. Objection overruled. Exception for defendant and bill sealed. [5]

Plaintiff's counsel offered in evidence ordinance of May 6, 1876, Book of Ordinances for 1876, page 98. (Ordinance read.) Objected to. Objection overruled. Exception for defendant and bill sealed. [6]

Plaintiff's counsel offered in evidence ordinance approved July 2, 1890, Book of Ordinances for that year, page 270. (Ordinance read.) Objected to. Objection overruled. Exception for defendant and bill sealed. [7]

Plaintiff's counsel offered in evidence ordinance approved Sept 25, 1890, Book of Ordinances for that year, page 301. (Ordinance read.) Objected to. Objection overruled. Exception for defendant and bill sealed. [8]

Defendant's counsel objected to all testimony relating to the repaving of Broad street. Objection overruled. Exception for defendant and bill sealed. [9]

Defendant's counsel offer to prove that the cars of the defendant company from Glenwood avenue to Erie avenue were unnecessarily and illegally stopped running by the city officials of the city of Philadelphia for a period of two months, and the loss of material, the expense of repairing, and the loss of profits of the road. Objected to. Objection sustained. Exception for defendant and bill sealed. [10]

Defendant's counsel offer to prove that the work could have been done without the stoppage of defendant's cars.  Objected to, overruled, exception for defendant and bill sealed. [11]

The court directed the jury to find a verdict for plaintiff, reserving the following point: " Whether the act of 1873, and defendant's acceptance of its provisions, or any other facts which have been given in evidence, relieved the defendant from the obligation of paving Broad street."  The court subsequently entered judgment for plaintiff on the verdict.

*Errors assigned* were, (1–8) admitting acts of incorporation and ordinances ; (9–11) rulings on evidence ; (12) entering judgment on point reserved ; (13) not entering judgment for defendant non obstante veredicto.

*G. W. Biddle* and *J. G. Johnson*, *Biddle & Ward* with them, for appellant.—The defendant is not liable under the act of March 27, 1873, because this act merely empowered the defendant to merge with another railway company, provided it renounced all rights possessed by that other company upon Broad street, and authorized the defendant to use Broad street temporarily, but conferred no liability whatever with regard to the repairing or paving of the streets : Harrisburg v. Harrisburg Passenger Railway Co., 1 Pearson, 298.

The defendant is not liable under the charter of the Navy yard, Broad street and Fairmount Railway Company, because only bound to repair Broad street between its tracks : City of Harrisburg v. Harrisburg Passenger Railway Co., 1 Pearson, 298 ; Phila. & Reading R. R. Co. v. City, 47 Pa. 325 ; Thirteenth & Fifteenth Streets Passenger Railway Co. v. City, 13 W. N. C. 487.  The defendant is not liable under the charter of the Navy Yard, Broad Street and Fairmount Railway Company, because not liable to pave or repave at all, but only to repair : Fort Wayne and Elmwood Ry. Co. v. City of Detroit, 34 Mich. 78 ; State v. Corrigan Street Ry. Co., 85 Mo. 263 ; Farrar v. City of St. Louis, 80 Mo. 379 ; Western Paving & Supply Co. v. Citizens' Street Railroad Co., 128 Ind. 525 ; Chicago v. Sheldon, 9 Wallace, 50.  The defendant is not liable for the paving of Broad street at all, because no passenger railway company in Philadelphia is liable for the repaving of a street

not already paved, and Broad street was not paved at the time the supposed cause of action arose: Lake v. City, 150 Pa. 643; Harrisburg v. Segelbaum, 151 Pa. 172; Boyer v. Reading, 151 Pa. 185; City v. Ehret, 153 Pa. 1; Greensburg v. Laird, 138 Pa. 533. The defendant is entitled to a certificate of set-off by reason of the improper method of paving Broad street, which caused loss by the stoppage of the defendant's cars, and increased its expenses in the rearrangement of its tracks on that street: Easton etc. Pass. Ry. Co. v. City of Easton, 133 Pa. 505.

*E. Spencer Miller,* assistant city solicitor, and *Charles F. Warwick,* city solicitor, *James Alcorn,* assistant city solicitor, with them, for appellee.—A municipality might be legally justified in charging a proportionate rent to private moneyed corporations, which thrive by the enjoyment gratis of expensive public works: St. Louis v. Western Union Telegraph Co., 148 U. S. 92; 149 U. S. 465; Frankfort Pass. Railway Co. v. Phila., 58 Pa. 119. The plenary liability of this company to repave Broad street was declared by the court of common pleas No. 4 after full argument in 1883 in Thirteenth & Fifteenth Streets Passenger Railway v. City of Phila., 13 W. N. C. 487. Damages in tort cannot be the subject of set-off proper, and they cannot constitute a defense at all save in the transaction wherein they arise: Patterson v. Huling, 10 Barr, 506; Wilson's App., 108 Pa. 344; Ellison v. Weed, 2 Northampton Co. Repts. 107. A grant to a corporation is strictly construed in favor of the public and against the indulgences claimed by the grantee: Commonwealth v. Railway Co., 27 Pa. 339; Pittsburg etc. Co. v. Bruce, 102 Pa. 23; Gray's Ferry Passenger Railway Co. v. City of Phila. and William Baldwin, 2 W. N. C. 639; Phila v. Ridge Ave. Passenger Railway Co., 143 Pa. 444.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895:

The Railway Company appellant was formed by the merger of two passenger railway companies previously existing, one of the same name, chartered April 8, 1859, and the other called the Navy Yard, Broad Street and Fairmount Railway Company, chartered May 16, 1861. The validity of the merger under then existing laws having been questioned, an act of assembly was passed March 27, 1873, P. L. 435, confirming the merger,

providing for the surrender of certain corporate rights, and conferring other rights and making them exclusive. This act was solemnly accepted by the appellant by deed in the form prescribed by the act, filed in the office of the secretary of the commonwealth, April 8, 1873, and thus became the amended and operative charter of the consolidated company appellant.

It is argued that this was not in any sense a charter nor an amendment to a charter, but merely a contract between the legislature and the railway company by which the former confirmed certain rights other than those on Broad street, and the company abandoned its rights on Broad street, with a temporary license to run its cars thereon until Thirteenth and Fifteenth streets should be opened from time to time for six consecutive squares north or south of specified points. This claim however cannot be sustained. The act is in its nature and effect a grant of franchises, some positive and at least one negative privilege in the nature of an amended franchise, the right to abandon a part of the franchise to lay tracks on Broad street that was contained in the charter of the Navy Yard, Broad Street and Fairmount Railway. The facts that the consideration to the state for passing the act was the surrender of other rights or franchises claimed by the company, and that the occupation of Broad street was terminable on specified contingencies, did not vary the nature of the act as a legislative grant of new franchises as well as a confirmation of others claimed under prior charters. Those charters were by the act continued and confirmed, as to all the franchises and powers of both companies, except so far as changed or taken away by the act itself, and of course the franchises so continued were accompanied with all the incidents, duties and obligations attached to them in the first instance.

The act of 1873 therefore is the operative and controlling charter of the appellant, but we must look for its grants and limitations, as well as for its burdens and obligations on the appellant, to those terms of the two original charters which remained unchanged and confirmed.

The charter of the original Thirteenth and Fifteenth Streets Railway provided in section 9 " That the councils of the city of Philadelphia may from time to time by ordinances, establish such regulations in regard to said railway as may be required

for the purposes of paving, repaving, grading . . . . and the said company shall conform to the grades established by councils of the several streets and avenues traversed by the said railway. . . . The streets thus occupied by said company shall be by them kept in good order and repair at their own proper expense."

The charter of the Navy Yard, Broad street and Fairmount Company provided in section 10, that "the said company shall be compelled to keep in constant repair that portion of the street which they use and occupy, and (be) subject to such ordinances of councils as relate thereto, not inconsistent with this act."

By both of these provisions the company is charged with the duty to keep in repair. Both provisions are general, applicable to all streets on which tracks are laid, and continuing, that is, applying from time to time whenever repairs may become necessary. The fact that part of Broad street at the time of the charter of the Navy Yard, etc., Company was required to be kept in repair by other parties who had privileges thereon, would not prevent the duty becoming incumbent on the appellant when circumstances should otherwise raise it. There is nothing therefore peculiar in regard to the situation of Broad which makes the duty of the appellant in regard thereto any different from that in regard to any other street upon which its tracks are laid.

The duty to keep the streets in repair being thus clear under either and both charters, two questions arise as to its extent. First, does it include the whole street from curb to curb between the points longitudinally where the line is laid on it, or is it restricted to the space between the tracks? Secondly, does it extend to a practical repaving with a different and improved pavement?

First, the obligation to repair the whole street from curb to curb, if not expressly decided, has been so clearly foreshadowed as to leave little doubt of what the conclusion must be. Under the charter of the Thirteenth and Fifteenth Streets Company the question could hardly arise, for the words are that the company shall conform to the grades of the streets traversed by the said railway and the streets thus occupied shall be kept in good order and repair. This so clearly means the whole of the streets

which the railway traverses that further elaboration seems to be unnecessary. But it is argued that Broad street is only occupied by virtue of the franchise of the Navy Yard, etc. Co., and the obligation of that charter is only to keep in repair "that portion of the street which they use and occupy," which should be construed to mean that portion between the tracks. To this argument it would be sufficient answer that at most the words can only be claimed as doubtful and ambiguous, and in such cases all public grants are to be construed liberally in favor of the public and strictly against the grantee: Pittsburg R. R. Co. v. Bruce, 102 Pa. 23. But it is not necessary to resort to this rule. As already said the provisions of both the original charters in reference to keeping the streets in repair are general and applicable to all streets on which tracks are laid, and are meant to be of continuous application from time to time as circumstances may require. Both charters included the right to lay tracks on several streets and on different streets at different times, but neither looked to the occupation of the whole length of any of the streets named. The right was given to occupy certain portions longitudinally of the specified streets, and the corresponding duty was imposed of keeping those portions in repair. Whether the language used was as in the one case " the streets traversed and occupied," or as in the other, " that portion of the street which they use and occupy " the idea was the same, to wit, that the franchise to occupy and the obligation to keep in repair should be coextensive. In Pitts. and Birmingham Ry. Co. v. Pittsburg, 80 Pa. 72, a somewhat analogous case, where the question was not what part of the street but what kind of obstruction the company were bound to remove, the principle was well stated, that under the general law the obligation to keep the whole street in repair rested on the municipality, and that obligation the charter transferred to the company. So it is in the present case, whatever the duty of the municipality would have been as to repairs upon the streets where the tracks are laid, is now the duty of the railway company laying and using the tracks, and that plainly includes the whole width of the street.

But the duty does not rest on these provisions alone. It arises independently, but with equal conclusiveness from other parts of the charter. Section 10 of the act of incorporation of

the Navy Yard etc. Ry. Co. provides that " the said company shall be compelled to keep in constant repair that portion of the street which they use and occupy, and (be) subject to such ordinances of councils as relate thereto." This includes existing as well as future ordinances, and among those existing at the date of the charter was the general ordinance of July 7, 1857 (Ord. 1857, p. 248), which provided that all passenger railroad companies should be " at the entire cost and expense of maintaining, paving, repairing and repaving that may be necessary upon any street . . . . occupied by them." This, as was well said by THAYER, P. J., in Phila. and Gray's Ferry Ry. Co. v. Philadelphia, 2 Weekly Notes, 639, means " not upon a portion of the street occupied but upon the whole street." The subject was elaborately and very ably discussed in that case, and the opinion of THAYER, P. J., is cited with approval in Philadelphia v. Ridge Ave. Pass. Ry. Co., 143 Pa. 444, where the present chief justice says : " It has never been seriously doubted, nor can it be, that the duty to repair or to repave, when either is adjudged necessary, extends to the entire roadway from curb to curb."

Secondly, that the duty to repair, where it exists, extends to the replacement of an old pavement by a new one of a different and improved kind was expressly held in Phila. v. Ridge Ave. Ry. Co., 143 Pa. 444 (471-2), where it was said by the present chief justice, " The duties specified in (the company's) charter were imposed with reference to the changes and improved methods of street paving which experience might sanction as superior to and more economical than old methods. In other words the company is bound to keep pace with the progress of the age in which it continues to exercise its corporate functions. The city authorities have just as much right to require it to repave at its own expense with a new, better and more expensive kind of pavement as they have to cause other streets to be repaved in like manner at the public expense."

In the present case of Broad street the fact that the occupation is terminable upon certain contingencies which may happen at any time and at the will of the city does not destroy the obligation. As a fact the occupation has already lasted some years, and from the nature of the surface of the ground and its existing uses, is likely to last some years longer, but

however this may be it does not alter the mandate of the charter and the ordinances, to keep the street in repair so long as it is occupied.

A question is raised in the argument that the· appellant is not liable because the so-called repair or repaving of Broad street was in fact a first or original paving, and there is no obligation to pave in the first instance, as so much of the ordinance of July 7, 1857, as required paving of a street not previously paved, was repealed by the ordinance of April 1, 1859, (Ord. 1859, p. 138.)  There is nothing on the record however to show the fact now alleged.  The appellant did not at any time offer to prove it, nor ask to have the jury pass upon it. The facts were practically treated as undisputed.  The judge directed the verdict as a matter of law and there is no assignment of error to his action in so doing.  Gen. Wagner for the plaintiff testified that the former pavement was partly cobble and partly macadam, and other witnesses speak of a paving with macadam in the center and cobble at the sides.  Even if the whole street was macadamized it would not follow necessarily that it was not paved.  That is a question of intention. Some misapprehension seems to exist in the professional mind as to our recent decisions on this subject, and they have therefore been reviewed and the ratio decidendi discussed in Philadelphia v. Eddleman, opinion filed herewith, to which reference is made for all that is necessary to be said on the present point.

The only remaining assignments of error to be noticed relate to the exclusion of appellant's offer to show damages by way of set-off from the improper method of paving Broad street, causing stoppage of the cars and consequent loss of profits. Passing by the question whether the offer was clearly within the exception to the general rule that a set-off in tort cannot be made to an action ex contractu, these offers substantially sought to raise the question of an abuse of the municipal authority and discretion.  By the ordinance of 25th September, 1890, (Ord. p. 301) the councils instructed the director of public works to stop the running of the cars " on Broad street north from Glenwood avenue until the said street is repaved in accordance with the notice to do such work served by him on the passenger railway company . . . . as required by the ordinance of July 7, 1857 " etc.  The ordinance of July 7, 1857, sec. 4, provides

that "it shall be the duty of any company as aforesaid . . . . to pave or repave the highways, as hereinbefore provided, and should they refuse or neglect to do so for ten days from the date of such notice . . . . councils may forbid the running of any car or cars upon the said road until the same is fully complied with." As heretofore shown the appellant is subject to the ordinance of 1857, and it thus appears that the act of stopping the cars while the repaving was being done was expressly authorized by that ordinance. It was not offered to be shown that the state of facts which justified the action of councils did not exist, to wit, the resolution for repaving, the notice to appellant to do its part, and the failure to do so in the time required. Appellant's offer was to show that the work could have been done without stopping the cars, and therefore with less loss to appellant. But as the city was acting on its express legal rights, the offer was immaterial and irrelevant. It was not for appellant, or even the court and jury to review the city's exercise of its unquestionable discretion.

Judgment affirmed.