# Richmond

## NORFOLK AND PORTSMOUTH TRACTION CO. v. CITY OF NORFOLK.

### January 16, 1913.

### On Petition to Rehear, June 12, 1913.

1. STREET RAILWAYS—*Charter Powers—Strict Construction.*—The charter of a street railway company has the elerents of a contract and is to be strictly construed against the company. The company has no doubtful rights under its charter, for when there are doubts they are construed against the company and in favor of the city.

2. STREET RAILWAYS—*Paving Streets—Character of Paving.*—The obligation of a street railway company to keep its portion of the streets "well paved and in good repair" necessarily involves the duty to keep pace with the growth and progress of the city, and to conform its work to the policy of the city in the matter of street improvement. The railway company must put its portion of the street in the same condition as the rest of the street, even though that necessitates the laying of a new pavement.

3. STREET RAILWAYS—*Paving Streets—Proportion of Expense.*—Where a street railway company is bound by law to keep the space between its rails and for two feet beyond them well paved, which part of the paving is more costly than the rest of the street, the extra and separable expense of such part of the paving should be assessed exclusively to the company; and such company is not entitled to be relieved from a tax for paving the street by paving the proportion thereof which the width which it is obliged to pave bears to the width of the whole street.

4. MUNICIPAL CORPORATIONS—*Power of State Over Streets—Paving by Street Railway—Charter Obligation—Release by Ordinance—Ultra Vires Act.*—The powers of a municipal corporation with respect to its streets are continuing and inalienable, and where the charter of a street railway company imposes upon the company the duty of keeping certain portions of the streets well paved and in good order, without expense to the city, a city ordinance which undertakes to relieve the company of such duty, in whole or in part, is *ultra vires* and void. The legislature has supreme control over streets, subject to constitutional re-

strictions, while to the city is delegated the power to hold them as trustee for the general public and to keep them in repair for public convenience and safety.

5. MUNICIPAL CORPORATIONS—*Ultra Vires Ordinance—Estoppel.*—If a city ordinance be *ultra vires* and void, it cannot operate as an estoppel.

### ON A REHEARING.

6. APPEAL AND ERROR—*Points Not Raised Below.*—Exceptions of every kind, when necessary at all, should be taken in the trial court. They cannot be taken for the first time in the appellate court. The appellate court can only review the case made and as made by the parties in the court below. If it were otherwise the appellate court would be converted into a court of original jurisdiction.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Henry W. Anderson* and *Walter H. Taylor,* for the plaintiff in error.

*Geo. C. Cabell,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of assumpsit brought by the defendant in error, the city of Norfolk, against the plaintiff in error, the Norfolk and Portsmouth Traction Company, to recover by way of damages the cost of materials and labor furnished and done by the plaintiff in laying wood block paving, in repaving between and for two feet beyond the outer rails of the defendant's tracks on Granby street, and for similar repaving with wood block and bitulithic paving

on Botetourt street; also for furnishing materials and laying extra concrete base under the defendant's tracks in connection with such repaving. The defendant paid the cost of labor for the work, but denied liability for the cost of materials. There was a verdict and judgment for the plaintiff for $22,060.93, to which judgment this writ of error was awarded.

The question for our determination is whether the defendant is responsible for the cost of materials furnished by the plaintiff.

On January 4, 1866, the General Assembly incorporated the Norfolk City Railroad Company, the predecessor of the plaintiff in error, granting the company the privilege of laying its tracks in the streets of the city of Norfolk, but upon condition that the consent of the council of the city should be first obtained. Clause 3 of the charter provides: "That said company shall keep that portion of the street occupied by its track or tracks, embracing the space between said tracks and a distance of at least two feet beyond the outer rails thereof, well paved and in good repair, without expense to the corporation of the city of Norfolk; and the rails used for said tracks shall be of the most approved pattern for such purposes; and shall be laid at the distance of five feet five inches between the outer ridges or flanges thereof, so as to form as little obstruction as practicable to the passage of carriages or other vehicles along or over said tracks."

This controversy arises not so much over the interpretation of the foregoing clause (the language of which is free from ambiguity) as it does with respect to the attempted modification of the obligations thereby imposed upon the company by section 9 of an ordinance passed by the city council December 14, 1887.

Section 9 is as follows: "The said railway shall be so made and laid down as to conform to the established,

or proposed, grades of the several streets to be occupied by it, as given by the city engineer; and in case the several streets occupied by it shall, in the future, be paved, or repaved, the city of Norfolk shall furnish and deliver the material therefor upon said streets and have the work done; but the proprietors, or lessees, of said railway shall pay the said city for the cost of labor for paving the same between the tracks and two feet on each side thereof, such amount, in case of non-payment by the company for a period of thirty days after the work is done, to be recoverable by legal proceedings in the name of the city. And in case the grade of said streets, or any of them, or of any part thereof, shall be changed hereafter, the proprietors or lessees of the said railway, at their own expense, shall make corresponding alterations of the said tracks; and the owners, proprietors or lessees of the said railway shall keep the streets covered by said tracks, and extending two feet on the outer limits of each side of said tracks, in thorough repair at their own expense."

We have no difficulty in reaching the conclusion that as an original proposition the predecessor of the defendant was under charter obligation to keep its portion of the streets, as therein defined, well paved and in good repair, and at its own expense. The charter so declares in language too plain to call for construction or to admit of controversy. See also Va. Code, 1904, sec. 1294-i (3), which authorizes a street railway company, with the consent of the municipal authorities, to lay its tracks in the streets, but likewise imposes upon such company the duty to restore the pavements of the streets and to maintain them in good condition.

The apparent conflict among the authorities on the subject of the extent of the liability of these companies is due to differences in the language of their charters.

For example, in the case of *Chicago v. Sheldon,* 9 Wall.

54, 19 L. Ed. 594, so much relied on by the plaintiff in error, the charter there construed was quite different from this charter. It required the company to keep its portion of the street "in good repair," while the language here employed is to keep it "well paved and in good repair."

In construing language similar to that found in the present charter, in cases arising in some of the most progressive and important cities of the country, the trend of the more recent and best considered decisions is to hold street railway companies to a high degree of responsibility and strict compliance with their charter duties in relation to their occupancy of streets. The courts proceed upon the theory that franchises granted to such companies are in derogation of common right, and are considered an encroachment upon the primary use of the streets by the public; and the principle is fundamental that such grants are to be construed most strongly against the grantee. Hence it is said: "A charter, having the elements of a contract, granted to a street railway company, is to be strictly construed against the company, and it has no doubtful rights under such charter; for when there are doubts they are construed against the grantee and in favor of the city." *Western Paving and Supply Co.* v. *Citizens' St. R. Co.,* 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, 10 L. R. A. 770, 25 Am. St. Rep. 462. The decisions of the Supreme Court of the United States are especially pronounced in maintaining this construction. *St. Clair, &c.,* v. *Illinois,* 96 U. S. 63, 24 L. Ed. 651; *Oregon R. & N. Co.* v. *Oregonian R. Co.,* 130 U. S. 1, 26, 32 L. Ed. 837, 9 Sup. Ct. 409; *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 50 L. Ed. 353, 26 Sup. Ct. 224.

As corollary to this canon of construction, it is the accepted doctrine that the obligation resting upon a street railway company to keep its portion of the streets "well paved and in good repair" (or language of like import)

necessarily involves the duty to keep pace with the growth and progress of the city, and to conform its work to the policy of the municipality in the matter of street improvement. Hence, for a company to pave with cobble-stones could not be regarded as a compliance with its duty to keep its part of the street "well paved and in good repair," where the rest of the street is laid with wood block or bitulithic pavement.

In *District of Columbia* v. *Washington R. R. Co.,* 4 Mackey (D. C.) 214, it was held: "That where a street railway company's charter required it to keep its tracks, and the space between the rails and two feet outside, well paved and in good repair, it could be required to construct a pavement where one did not exist before its road was built, and to construct such kind of pavement as the authorities should direct."

So in the case of.*Mayor of the City of New York* v. *Harlem Bridge M. & F. Ry. Co.,* 186 N. Y. 304, 78 N. E. 1072, the clause of the charter provided: "The said grantees or their successors shall keep the surface of the street inside the rails and for one foot outside thereof, in good and proper order and repair, and conform the tracks to the grades of the streets or avenues as they now are or may hereafter be changed by the authorities of the aforesaid towns." The court construing this clause says: "While this statute does not itself specify, as in the case of the railroad law, that this shall be done under the super-vision of the municipal authorities and in accordance with their specifications, that necessarily follows from the general duties and powers conferred upon such authorities by law. Therefore, when the proper authorities, in view of the condition of the street as shown to exist, decided that a granite block pavement should be laid, we think that the requirement for repairing and keeping in good order compelled the defendant to co-operate with the city,

and put the space between its rails in the same condition as the rest of the street, even though that necessitated the laying of a new pavement. It has been held elsewhere by this court that an obligation, couched in substantially similar language, resting upon a railroad company, will compel it under proper conditions to lay a new kind of pavement. . . . The question of what shall constitute keeping a pavement in the tracks of a railroad company in good order and repair is to be determined somewhat at least by reference to existing and surrounding conditions, and in our judgment it would be altogether too narrow a view to hold that where a municipality had for sufficient reason decided to pave a street with asphalt or other new pavement a railroad might discharge its obligations to keep its part of the street in good order and repair by merely patching up a dirt road or some species of pavement which had become antiquated and out of condition and which was entirely different from that adopted in the remainder of the street." *Columbus St. Ry. Co. v. City of Columbus,* 43 Ind. App. 265, 86 N. E. 83; *City of Reading v. United Traction Co.,* 215 Pa. St. 250, 64 Atl. 466; *City of Philadelphia* v. *Thirteenth, &c., Street Pass. Ry. Co.,* 169 Pa. 269, 33 Atl. 126; 2 Elliott Roads and Streets, sec. 987.

It is conceded that the materials furnished and work done on the extra concrete base were rendered necessary by the increased size and weight of the defendant's rails and rolling stock, and was of no benefit to the city except to prevent damage to the surface of the street from inadequate foundation.

The case in that aspect is controlled by the case of *Washington & Georgetown Ry. Co. v. District of Columbia,* 108 U. S. 807, 27 L. Ed. 807, 2 Sup. Ct. 865. The court there held: "Where a street railway company is by law bound to keep the space within its tracks and for two feet

beyond them well paved, which part of the paving is more costly than that of the rest of the street, the extra and separable expense of such part of the paving should be assessed exclusively to the company; and such company is not entitled to be relieved from a tax for paving the street by paying the proportion thereof which the width which it is obliged to pave bears to the width of the whole street."

We shall next consider the contention of the plaintiff in error, that, whatever may have been its original charter obligations, it has been released by the city ordinance from all responsibility in the matter of paving its part of the streets, except only the liability to pay the city the cost of labor in doing the work.

We are of opinion that the paving and repairing clause of the charter is mandatory; and that the city ordinance which undertakes to repeal it, in whole or in part, is *ultra vires* and void. The General Assembly in granting the charter, saw fit to impose upon the company the duty of keeping the part of the streets occupied by its tracks, as therein defined, "paved and in good repair without expense to the corporation of the city of Norfolk," and the city council had no power to shift that burden from the company to the municipality.

It is said, however, that this controversy is only between the city and the company, and, therefore, that the State is not interested in the result; and that the city is estopped to question the validity of its own ordinance. The question is not one of policy, as to whether the expense shall be borne by the city or the company, but of power. If the city has power to relieve the company from one of its mandatory charter obligations, it has power to relieve it from all; and any argument that leads to such a result cannot be sound. If the ordinance be *ultra vires* and void, it cannot, of course, operate as an estoppel.

In *Roanoke Gas Co.* v. *Roanoke,* 88 Va. 810, 14 S. E. 665, it was held that the powers of a municipal corporation with respect to its streets are continuing and inalienable."

So, in *Basic City* v. *Bell,* 114 Va. 157, 76 S. E. 336, it was doubted whether the doctrine of equitable estoppel exists in this State as regards the powers and obligations of a municipal corporation over its streets.

In *City of Reading* v. *United Traction Company,* 215 Pa. St. 250, 380, 64 Atl. 446, 7 Ann. Cas. 380 (see also notes to the principal case), it was held that a street railway company, in the absence of express contract or statutory direction, is bound to keep the portions of the streets occupied by its right of way in proper repair. The court also observes: "That the streets of a city belong to the State for the use of the people at large. To the municipality, as its agent, it commits the duty of at all times keeping them in proper repair for the convenience and safety of the public. This duty of the municipality does not shift, except when it is expressly or impliedly imposed upon another." *City of Richmond* v. *Smith,* 101 Va. 161, 43 S. E. 345; *Bellenot* v. *City of Richmond,* 108 Va. 314, 61 S. E. 785; *White Oak Coal Co.* v. *City of Manchester,* 109 Va. 749, 64 S. E. 944, 132 Am. St. Rep. 943.

These principles are grounded upon the general proposition that the legislature, subject only to constitutional limitation, has supreme control over streets and highways; while, on the other hand, the power of a municipality is wholly dependent upon and measured by delegation from the government, and is held and exercised in subordination to its will. The one exerts sovereign power, the other granted power, and holds its streets as trustee for the general public.

The opinion handed down at the present term in the case of *Danville* v. *Danville Ry. & Elec. Co.,* 114 Va. 482, 76 S. E. 913, is in harmony with the views herein expressed.

Upon the whole case, we are of opinion that the judgment is without error and should be affirmed.

*Affirmed.*

UPON PETITION TO REHEAR.

*By the Court* : The specific ground upon which a rehearing of this case is sought is because, it is said, the Traction Company was not called on in the first instance by the city to repave its portion of the streets. And granting that the company was under charter obligation to do such repaving, nevertheless until after notice it had refused to comply with such demand, the city had no authority to do the work at the company's expense; and, therefore, could not maintain an action to recover the cost of the work done.

It is said that this proposition is so plainly correct that it is unanswerable; and complaint is made that it was not noticed in the opinion of the court.

The omission was not an inadvertence; the assignment was not discussed in the opinion simply because no such question was properly raised by the record, and it was, therefore, not within the cognizance of an appellate court. So far as the record discloses, no such defense was relied on in the trial court, and no exception was taken on that ground. If the question had been raised in the lower court, *non constat* but that the city could readily have proved notice and demand. The company "was silent when it should have spoken; and it will not be heard to speak when it should be silent."

It affirmatively appears from the agreed statement of facts that "the question involved in this case is the liability of the Norfolk and Portsmouth Traction Company for the cost of the material used in laying wooden blocks on the portion of Granby street and Botetourt street lying

between the tracks and two feet on each side thereof, in the year 1910, and for the cost of the material in an extra concrete foundation under the tracks."

It is a fundamental rule of practice that "exceptions of every kind, when necessary at all, should be taken in the court whose judgment is to be reviewed. Otherwise the appellate court would be converted into one of original jurisdiction." See note to *Warren* v. *Warren*, 2 Va. L. Reg. 195-6.

Burks, J., in *Redd* v. *Supervisors*, 31 Gratt. (72 Va.) 685, at p. 711, observes: "We can only review the case made and as made by the parties in the court below. We cannot go outside of the record and decide a case upon facts *dehors*. This would, in my judgment, be a palpable and flagrant abuse of appellate jurisdiction."

So also in *Camden* v. *Doremus*, 3 Howard 515, 11 L. Ed. 705, it was said: "It would be more extraordinary still if, under the mask of such an objection or mere hint at an objection, a party should be permitted in the appellate court to spring upon his adversary defects which it did not appear he ever relied on, and which, if they existed and had been openly and specifically alleged, might have been easily cured." *Warren* v. *Warren*, 93 Va. 73, 24 S. E. 913; *Lambert* v. *Jenkins*, 112 Va. 376, 372, 71 S. E. 718.

Authorities could be multiplied upon this obvious and settled rule of appellate practice, but the foregoing sufficiently illustrate it.

It was upon these considerations that the court did not feel called upon to notice in its opinion the assignment to which attention is now invited.

*Rehearing denied.*